TEXAS & P. RY. CO. et al. v. RAILROAD COMMISSION OF TEXAS et al.

(Supreme Court of Texas. Nov. 13, 1912.)

1. APPEAL AND ERROR (§ 987*)—QUESTIONS OF LAW AND FACT.

Where the Supreme Court cannot say that orders of the State Railroad Commission prescribing a system of bookkeeping are unreasonable, as a matter of law, it cannot determine that question as one of fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3893–3896; Dec. Dig. § 987.*]

2. CARRIERS (§ 10*)—STATE REGULATION— BOOKKEEPING SYSTEM.

The act of Congress (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3169]) authorizing the Interstate Commerce Commission to prescribe a uniform bookkeeping system and prohibiting the keeping of any accounts, etc., other than those ordered by the commission, was directed only against other accounts of matters relating to interstate commerce, and does not preclude a state Commission from requiring the keeping of other accounts of matters relating to purely intrastate business.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7, 9, 18–22; Dec. Dig. § 10.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**3. STATUTES (§ 188*)—WORDS AND PHRASES —CONSTRUCTION.**

Words in common use when used by the Legislature in a statute are to be understood as intended to express the sense in which they are ordinarily used.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. § 188.*]

**4. CARRIERS (§ 10*) — STATE REGULATION — "BOOKKEEPING"—"SYSTEM"—"METHOD."**

Under Rev. St. 1895, art. 4571 (Rev. Civ. St. 1911, art. 6667), giving the Railroad Commission "power to prescribe a system of bookkeeping," since "system" means "method" and "bookkeeping" is the art of recording in a systematic manner the transactions of merchants, traders, and other persons engaged in pursuits connected with money, the commission cannot order the apportionment of items of expense to be made upon a purely arbitrary basis of "car miles" in a certain ratio between passenger traffic and freight, and orders prescribing that certain conclusions and deductions be entered upon the books of the railroads are not authorized (citing 1 Words and Phrases, 842).

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7, 9, 18–22; Dec. Dig. § 10.*

For other definitions, see Words and Phrases, vol. 5, p. 4499; vol. 8, pp. 6844–6845.]

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the Texas & Pacific Railway Company and others to enjoin the Railroad Commission of Texas and others from enforcing certain orders. From a judgment of the Court of Civil Appeals of the Third District (140 S. W. 829) reversing a judgment of the District Court for the plaintiffs, the plaintiffs bring error. Reversed.

Baker, Botts, Parker & Garwood, of Houston, Terry, Cavin & Mills, of Galveston, Andrews, Ball & Streetman, of Houston, A. W. Houston, of San Antonio, T. J. Freeman, of New Orleans, La., and Hiram Glass, of Austin, for plaintiffs in error. Jewel P. Lightfoot, Atty. Gen., and Jas. D. Walthall and R. E. Crawford, Asst. Attys. Gen., for defendants in error.

BROWN, C. J. Article 4571 of the Revised Civil Statutes of 1895 (article 6667, R. S. 1911) contains this language: "Said commission shall have the power to prescribe a system of bookkeeping to be observed by all the railroads subject hereto, under the penalties prescribed in this article." In the exercise of that authority, the Railroad Commission of the state prescribed what it claims to be a system of bookkeeping for the government of all railroads operated within this state.

The Texas & Pacific Railway Company, the Gulf, Colorado & Santa Fé Railway Company, and other railroad companies, all engaged in operating their lines of railway in Texas, and engaged both in interstate and intrastate transportation of freight and passengers, instituted this suit in the district court of Travis county seeking to set aside and annul circular A2, by which the said Commission attempted to prescribe a system of bookkeeping to govern said railroad companies in keeping their books, and sought to enjoin the said Commission from making and enforcing similar orders. The trial was had before the judge of the district court who entered judgment according to the prayer of the petition of said railroad companies. Upon appeal to the Court of Civil Appeals of the Third District, the judgment of the district court was reversed, and judgment was entered denying any relief to the railroad companies. For convenience the plaintiffs in error will be called "the railroads," and defendants in error "the Commission."

The railroads attack circular A2 on four grounds of objection to its validity. We state the substance of the objections: (1) That the circular does not prescribe a system of bookkeeping. (2) That the orders complained of are unjust and unreasonable. (3) That the orders complained of are in conflict with the act of Congress because the accounts required to be kept are "other and different accounts than those required by the Interstate Commerce Commission" to be kept by plaintiffs in error.

[1] We will first dispose of the second and third grounds. We are not able to say that the orders complained of are unreasonable and unjust as a matter of law, therefore we have not jurisdiction to determine the questions of fact. The Constitution of the United States empowers Congress to regulate commerce between the states, as is found in the fourth paragraph of section 8 of article 1, which reads: "Congress shall have power * * * to regulate commerce * * * among the several states. * * *" In the exercise of that power, Congress enacted a law from which we copy as follows: "The Commission (Interstate) may, in its discretion, for the purpose of enabling it the better to carry out the purposes of this act, prescribe a period of time within which all common carriers subject to the provisions of this act shall have as nearly as may be a uniform system of accounts, and the manner in which such accounts shall be kept." "It shall be unlawful for such carriers to keep any other accounts, records or memoranda than those prescribed or approved by the Commission, and it may employ special agents or examiners, who shall have authority, under the orders of the Commission, to inspect and examine any and all accounts, records and memoranda kept by such carriers. This provision shall apply to receivers of carriers and operating trustees." "Any carrier that shall keep any other accounts, records or memoranda than those prescribed or approved by the Commission, shall be deemed guilty of a misdemeanor, and shall be subject, upon conviction by any court in the United States of competent jurisdiction, to a fine of not less than $1,000.00, nor more

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

than $5,000.00, or imprisonment for a term of not less than one year nor more than three years, or both such fine and imprisonment." The Interstate Commerce Commission prescribed a system of bookkeeping for all railroads which are engaged in interstate transportation of passengers and freight, and said Interstate Commerce Commission required such railroads to keep accounts of their intrastate traffic as well as of their interstate traffic.

It is urged upon this court that circular A2 is within the prohibition of the act of Congress (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3169]), which forbids any railroad company engaged in interstate commerce to keep any other accounts, etc., than those prescribed by the Interstate Commerce Commission, and in support of that contention we are cited to Interstate Commerce Commission v. Goodrich Transit Co., 224 U. S. 194, 32 Sup. Ct. 436, 56 L. Ed. 729, decided by the United States Supreme Court on April 1, 1912.

[2] We have examined the provisions of the law of Congress, and we believe that the prohibition contained in that law was directed against keeping other accounts, etc., of the matters provided for, as it affected the interstate traffic of such carriers. That court said: "Bookkeeping, it is said, is not interstate commerce. True, it is not. But bookkeeping may and ought to show how a business which, in part, at least, is interstate commerce, is carried on, in order that the Commission, charged with the duty of making reasonable rates and prohibiting unfair and unreasonable ones, may know the nature and extent of the business of the corporation, the cost of its interstate transactions, and otherwise to inform itself so as to enable it to properly regulate the matters which are within its authority." The bookkeeping which was prescribed by the Texas Commission, if it were such, would not be in conflict with the order of the Interstate Commerce Commission on the same subject. In the case cited, the Supreme Court of the United States said, in substance, that the inquiry by the Interstate Commerce Commission into the intrastate business was for the securing of information necessary to the exercise of its powers over interstate business, and did not in any manner affect the interstate rates. By the same reasoning the state Commission could inquire of the interstate business as information to aid in regulating intrastate rates. The two classes of business are so related that information as to the transaction of one class is necessary, or at least important, to aid in regulating the other. We overrule both objections.

It is objected that circular A2 issued by the Commission does not prescribe a system of bookkeeping. We copy from circular A2 as follows:

"Office of Railroad Commission of Texas. Circular No. A2. General Order.

"Basis for Dividing Operating Expenses of Railroads Between Freight and Passenger Service.

"Austin, Texas, August 13, 1907.

"Under the authority conferred upon it by article 4571 of the Revised Civil Statutes of 1895 of the state of Texas, wherein this Commission is empowered to prescribe a system of bookkeeping to be observed by all railroad companies subject thereto, it is hereby ordered by the Railroad Commission of Texas that the following 'basis for dividing operating expenses of railroads between freight and passenger service,' hereby adopted and promulgated by said Commission, shall be observed by all railway companies and receivers operating lines of railway in this state, in the keeping of the accounts and the compiling of the statistics of its business handled on and after July 1, 1907:

"General Rules.

"Section 1. All cars handled in passenger trains shall be rated as passenger loads.

"Section 2. Five empty freight cars shall be rated as two freight loads.

"Section 3. One passenger load shall be rated as two freight loads, except in mixed trains, when one passenger car shall be rated as one loaded freight car.

"Section 4. All mixed-train mileage shall be divided between freight and passenger on basis of loaded-car miles of each in mixed trains.

"Section 5. Expense of operating nonrevenue trains shall be charged on basis prescribed for charging other expenses incident to the particular service in which each nonrevenue train is engaged."

The subject of the circular is divided into five general heads, to wit: 1. Maintenance of Way and Structures. 2. Maintenance of Equipment. 3. Traffic Expenses. 4. Transportation Expenses. 5. General Expenses. The five general heads were subdivided into 123 subdivisions.

[3] Words in common use when used by the Legislature in a statute are to be understood as intended to express the sense in which they are ordinarily used. Lewis, Const. Stat. vol. 2, p. 654, § 358.

[4] The railroads contend that circular A2 does not prescribe a system of "bookkeeping," as that word is used in the statute, therefore it becomes important to ascertain the scope of the word "bookkeeping." We have found but one case which defines "bookkeeping"—Western Assurance Co. v. Altheimer, 58 Ark. 573, 25 S. W. 1069, cited by Judge Jenkins. In that case the court says: " 'Bookkeeping' is defined as 'the art of recording in a systematic manner the transactions of merchants, traders, and other per-

sons engaged in pursuits connected with money; the art of keeping accounts.'" Webster's, the Century, and the Standard Dictionaries each give practically the same definition as that used in the case named. Words and Phrases quotes from the case cited the definition of "bookkeeping." The American & English Encyclopedia of Law, vol. 4, quotes the same definition. In volume 5 of Cyc. the same definition of the word is given. The citations show the unanimity of the lexicographers and the compilers of legal definitions. We have no better source from which to ascertain the ordinary use of the word. In numerous cases wherein the question of compliance with the requirement of a stipulation in a fire insurance policy to keep a set of books, the courts have practically adopted the same definition, in harmony with the authorities cited.

We conclude that the Legislature intended to give to the Railroad Commission power to prescribe a system (method) for the railroads to follow in keeping accounts of their transactions in the operation of their roads. The word "system" means method, but, whatever system might be adopted, the matters to be entered must be transactions of the railroad companies; that is, the Commission might require the facts of the business to be made to appear by one method of bookkeeping or another, but the things required to be recorded must be such facts as constitute "bookkeeping." This order of the Commission did not require the railroad companies to record any transactions had or the results thereof, such as the number of passenger cars operated, and the miles run, etc., or the number of freight cars operated with the number of miles, whether loaded or empty; nor does the order require the entering of the cost of superintendence of each; nor to enter like facts with reference to any item of expense. Neither are the railroad companies directed by the circular to distribute or apportion any item of expense according to any known rule of law, business, or mathematics, but by arbitrary rules it directs the apportionment to be made upon a purely conjectural basis of "car miles" in the ratio of two-thirds against passenger traffic to one-third against freight. For example, if there be 10,000 car miles, and the cost of superintendence be $100,000, the passenger service would be charged with $66,666.66⅔, and the freight service would be charged with $33,333.33⅓. There is no rule of law or business that will support that order as a compliance with the statute. Our conclusions necessarily require the reversal of the judgment of the Court of Civil Appeals, but it does not follow that we must affirm the judgment of the district court. It is our opinion that the judge of the district court gave greater scope to the decision of the issue in this case than was justifiable, and might put unreasonable and unnecessary re-

strictions upon the Commission in the exercise of its lawful powers.

We limit our decision to holding that orders prescribing that certain conclusions and deductions be entered upon the books of the railroads were not authorized by the law which empowers the Commission to prescribe a system of bookkeeping. It is not the intention of the court to limit the Commission's power to make such distribution of the costs, maintenance, and earnings of different departments of the service of railroads as may be deemed necessary to a proper adjustment of passenger fares and freight charges. The circulars attacked by the railroads contain some items which we think might be properly entered upon the books of a railroad company. But the matters are so connected with others that we deem it wise for this court to leave it to the Commission to reconstruct its circulars in accordance with this decision; that is, matters to be prescribed for entry on the books of railroad companies must consist of facts and not conclusions, except such as bookkeeping would include. We realize that the work of the Commission is important to railroads and people, and we deem it proper to say that it is not intended in this opinion to go beyond the requirements of the facts of this case.

It is ordered that the judgment of the Court of Civil Appeals be reversed, and that judgment be here entered that the different circulars (A2, A3, A4, A5, and A6) be set aside and annulled. But this judgment is not to be construed as forbidding the including in subsequent circulars matters which were properly included in said circulars and were proper to be prescribed as "bookkeeping." It is further ordered that the railroads recover from the Commission all costs of this proceeding.