**CLARK, Secretary of State, et al. v. INTERNATIONAL HARVESTER CO.**

**No. 8704.**

Court of Civil Appeals of Texas. Austin.

March 30, 1938.

Rehearing Denied April 20, 1938.

Wm. McCraw, Atty. Gen., and John J. McKay, Asst. Atty. Gen., for appellants.

Coleman Gay, of Austin, for appellee.

BAUGH, Justice.

A very able motion for rehearing filed by the Attorney General and an exhaustive argument in support thereof filed by the franchise tax attorney for the Secretary of State have convinced us that our original disposition of this appeal was wrong. To avoid confusion and unnecessarily encumbering the official reports, we have concluded to withdraw our original opinion herein and to substitute this opinion in lieu thereof.

Suit was by the International Harvester Company, a foreign corporation, holding a permit to do business in Texas, against the Secretary of State, the State Treasurer, and the Attorney General, to recover $2,131.62 paid to the Secretary of State under protest and by him placed in a suspense account as provided by law in such cases. The sum involved was the amount demanded of appellee as penalties for alleged failure by it to pay, when due, its franchise taxes covering the calendar year 1936, and in addition the period from January 1, 1937, to May 1, 1937. From a judgment in a trial to the court without a jury in favor of appellee, the defendants, hereinafter for convenience designated as the state, have appealed. The questions involved present an interpretation of the franchise tax laws, chapter 3, title 122, R.S.1925, as amended, Vernon's Ann.Civ. St. art. 7084 et seq., relating to foreign corporations when first obtaining permits to do business in this state.

The following material facts appear: Appellee was granted a permit on December 31, 1935, by the Secretary of State to do business in Texas. On March 15, 1937, it filed with the Secretary of State its first franchise tax return, but did not pay nor tender its franchise tax covering the period above noted. The Secretary of State did not acknowledge receipt of this return. On April 9, 1937, the Secretary of State notified appellee of the amount of the tax due by it, and that a 25 per cent penalty had been assessed against it (the amount here involved), under the law, for failure to pay its franchise tax when due. Thereafter, and prior to May 1, 1937, appellee paid the tax levied, and the penalty under protest, which, as above stated, was deposited in a suspense account, the recovery of which appellee was awarded by the trial court.

In the R.S. of 1925, art. 7084 levied a franchise tax on domestic corporations and a separate article 7085 levied such franchise tax on foreign corporations granted permits to do business in Texas. In both cases such corporations were required to pay such taxes in advance on or before May 1st of each year. But as to foreign corporations granted a permit to do business in Texas, which had not theretofore done any business in this state, said article 7085 provided that "the franchise tax herein provided shall not be payable until the end of one year from the date of such permit." This provision was manifestly necessary because the amount of the tax was in part made dependent upon the ratio that such corporation's Texas business bore to its business done throughout the United States during this period, a matter that could not be ascertained until the end of the first year period. And article 7089, R.S.1925, provided that such corporation should file its first report with the Secretary of State "at the end of one year from the date of such permit."

In 1930, Acts 5th Called Sess. c. 68, p. 220, the Legislature repealed articles 7088

and 7090, R.S.1925, consolidated into one article and amended articles 7084 and 7085, and amended article 7089; and again amended these articles in 1931, Acts 1931, c. 265, p. 441, Vernon's Ann.Civ.St. Arts. 7084, 7089. The latter amendment made no material changes in the 1930 amendments, so far as the issues here involved are concerned, and the 1931 amendment is the statute governing this controversy. This statute as amended, article 7084, requires the payment *in advance* by every corporation, whether foreign or domestic, on or before May 1st of each year, of its franchise tax for the year following; but also provides that: "Where a foreign corporation applying for a permit has theretofore done no business in Texas, such tax shall not be payable until the end of one year from the date of such permit, at which time the tax shall be computed according to first year's business; and, at the same time, such corporation shall also pay its tax in advance, based upon the first year's business, for the period from the end of the first year to and including May 1st following."

Article 7089, which as enacted in the 1925 Revision required such first year foreign corporations, under penalty for failure or refusal to do so, to file their first year reports with the Secretary of State "at the end of one year from the date of such permit" was amended in 1930 and also in 1931, Vernon's Ann.Civ.St. art. 7089, so as to provide that such corporation "shall file its first report as of the end of one year from the day such permit was granted, within ninety (90) days of such date."

The Secretary of State interpreted these statutes to mean that as to such first year foreign corporations doing business in Texas, the 1925 R.S. statutes made such tax and report due at the end of the first year, but that the 1931 amendment to article 7089, Vernon's Ann.Civ.St. art. 7089, extended that period for a maximum of ninety days thereafter, prepared his forms and instructions for making such reports accordingly, and has held such corporations failing to pay such tax within ninety days of the end of such year subject to the penalty of 25 per cent under article 7091, which provides in part as follows: "Any corporation, either domestic or foreign, which shall fail to pay any franchise tax provided for in this chapter when the same shall become due and pay-able under the provisions of this chapter" shall be subject to a 25% penalty.

Article 7092 provides that the Secretary of State during the month of May of each year shall notify all corporations, both foreign and domestic, which have failed to pay such franchise tax "on or before the first day of May," that unless such tax and penalty be paid before the 1st day of July following, their right to do business in Texas will be forfeited; and provides the method by which such right may be revived, etc.

Appellee contends that in the light of all these provisions, May 1st is the only definite date fixed by the statutes as a "dead line" for delinquencies; and that consequently its failure to pay its tax did not incur the statutory penalty until the May 1st next following the end of its first fifteen months of business in Texas, that is, the May 1st following the end of the first year of its permit, plus the additional ninety days granted by the amended statute in which to make its first report.

At the request of the state the trial court filed his conclusions of law as follows:

"1. I conclude as a matter of law that, at the time plaintiff tendered its tax to the Secretary of State on April 16, 1937, and at the time it paid said tax on April 30, 1937, the penalty provided by Article 7091 had not attached.

"2. While it is difficult to arrive at the exact meaning of the pertinent statutes, I conclude as a matter of law that the tax due by plaintiff in this case for its first year's operations and for the period from the end of the first year to and including May 1st following did not become delinquent until May 1, 1937. I arrive at this conclusion from the fact that May 1 is the only definite date stated in the statutes with regard to the due date of such tax and the delinquency thereof.

"3. If I am mistaken in my conclusion that, under the pertinent statutes, a foreign corporation has until May 1 of the year following the close of its first year's business in Texas within which to pay its franchise tax covering its first year's operations and the period from the end of the first year to and including May 1st following, then I conclude as a matter of law that it was not the intention of the legislature to require the tax to be paid at the same time the franchise tax return was filed, and that the foreign corporation was at least entitled to a reasonable time after

filing its return and after being notified by the Secretary of State of the amount thereof within which to pay said tax.

"4. If I am mistaken in the above conclusions of law, and if, in fact, Articles 7084 and 7089, when construed together, mean that the tax for the periods involved in this case must be paid within ninety days after the close of the first year's business, then I conclude as a matter of law that the penalty provided in Article 7091 does not attach at the end of such ninety-day period, for the reason that such meaning is not expressed with the clearness and definiteness required of penalty statutes."

■ While it may appear that when all of these statutes are considered together some confusion apparently results as to a specific date after which penalties accrue for failure to pay such tax when due; upon consideration of the history and purposes of the franchise tax laws, we think the legislative purpose and intent is reasonably clear. If that intent can be fairly deduced from the acts themselves, these laws should be so construed as to effectuate it. Missouri-K.-T. Ry Co. v. Thomason, Tex. Civ.App., 280 S.W. 325, writ refused; Marfa Ind. School Dist. v. Davis, Tex. Civ. App., 102 S.W.2d 283, writ refused; 39 Tex.Jur. § 90, p. 166, and numerous cases there cited.

■ The basic franchise tax law of this state was enacted in 1907, Gen.Laws of Tex. 1907, 1st Ex.Sess., c. 23 pp. 502–508. That act required all franchise taxes, whether of domestic or foreign corporations, to be paid in advance. The section of that act, however, fixing the amount of such tax on foreign corporations authorized to do business in Texas, was held unconstitutional in Looney v. Crane Co., 245 U. S., 178, 38 S.Ct. 85, 62 L.Ed. 230. See, also, Western U. Tel. Co. v. Kansas, 216 U.S. 1, 30 S.Ct. 190, 54 L.Ed. 355; Western U. Tel. Co. v. State, 103 Tex. 306, 126 S.W. 1197. However, the Legislature in 1917, Laws 1917, c. 84, amended the 1907 act, article 7394, R.S.1911, changing the method of computing such tax as to foreign corporations fixing the amount, as at present, according to the ratio that its Texas business bore to its entire business. While the case of Looney v. Crane Co. had not then been finally decided, from the language used in the opinion, the 1917 act was manifestly passed to remove the constitutional objections urged in Looney v. Crane Co., and on which that portion of the 1907 act was stricken down as invalid. Prior to 1917 all franchise taxes were required to be paid in advance prior to May 1st. As against foreign corporations first entering the state, manifestly, under the new method adopted, the amount of the tax could not be determined until the end of their first year's business in Texas. The 1917 act, which was further clarified by amendment in 1919, Gen.Laws 1919, c. 42, p. 75, Rev.St. 1925, art. 7085, provided that all franchise taxes be paid in advance on or before May 1st of each year; but that as to first year foreign corporations entering the state, such tax "shall not be payable until the end of one year from the date of such permit," and further providing that "the second payment of such franchise tax shall be made for the period intervening between the date of such first payment and the first day of May following."

The act of 1907, which was carried into the R.S. of 1911 as article 7395, and into the R.S. of 1925 as article 7086, also provided that the tax for the fractional part of the year between the date a domestic corporation is chartered, or a foreign corporation is granted a permit to do business in Texas, and the May 1st following, shall be paid in advance. While this requirement as to foreign corporations which had not theretofore done business in Texas has been superseded by subsequent amendments delaying payment as to them until the end of their first year's business, it still obtains as to domestic corporations and manifests a consistent legislative policy to require payment of such taxes, wherever they could be computed, in advance.

Up to the time of the 1930 and 1931 amendments above cited, the law required such first year corporation to "file its first report to the Secretary of State at the end of one year from the date of such permit." (Italics ours.) Article 7089, R.S.1925. That the tax under these acts was "due and payable," within the meaning of article 7091 (which article has not been changed since its original enactment in 1907, when all such taxes were required to be paid in advance), at the end of its first year's business, we think there can be no doubt. Just how the Secretary of State administered this law prior to 1931 is not known. Manifestly, it was impossible for a corporation doing a nation-wide business, like appellee, to furnish to the Secretary of State any exact

statement, on a given date, of its entire business up to that exact date, and the amount of its Texas business up to such exact date. Though the statute provided that such franchise tax "shall not be payable until the end of one year from the date of such permit," this negative provision was obviously used in the nature of an exception to the general requirement that all such taxes be paid *in advance*. And any doubt that such tax, as to first year foreign corporations, becomes "due and payable" at the end of such first year is, we think, clearly removed by the further provision of the 1931 amendment that *"at the same time"* (that is, at the end of the first year) "such corporation shall also pay its tax *in advance*, based upon the first year's business, for the period from the end of the first year to and including May 1st following."

While in the interests of uniformity May 1st is the definite date fixed as a "dead line" for the payment of franchise taxes of all other corporations, and as to foreign corporations after their first year of business in the state; and· is the only definite calendar date stated in the statutes, it must be borne in mind that first year permit foreign corporations are the only corporations which are not required to pay such franchise tax in advance before beginning to do business in the state. In that case payment of the tax is delayed one year from the date of the permit to a date made definite by the permit itself. In giving such corporation, for obviously practical reasons, an additional time not to exceed ninety days from the end of such· first year in which to file its first report, as the 1931 amendment does, the most that can be said is that such amendment extends the time of payment of such tax, not to exceed ninety days, until such report is filed. This extension was manifestly for the convenience of the corporation and inured to its benefit. While in all other cases such reports must be made on or before March 15th, while the tax does not become delinquent until May 1st following, in such cases the tax involved is a payment in advance. Whereas, as to first year permit corporations, such as involved in the instant case, the corporation has already enjoyed a one year's delay in the payment of a tax which in all other instances is required to be paid in advance. · In such case, therefore, it cannot be said that to require such corporation to pay its tax when it files its report is a discrimination against it as compared with other instances where an interval of forty-five days, that is, between March 15th

when such report is due, and May 1st when the tax is due, is allowed other corporations. This because in the case of first year permit corporations they have already enjoyed a year's business in the state before paying such tax, which was further extended in 1931 for a period of not to exceed ninety days more.

We are of the opinion, therefore, that the Secretary of State's construction of said statutes, and the instructions printed on the forms furnished by him to appellee for making its report showing such construction, were proper; that they embody the legislative intent manifested by the language of the statutes themselves; and that appellee cannot complain of its own failure to pay its tax when due under the law, because it had improperly construed these statutes as giving it until May 1, 1937, in which to pay its tax without penalty.

It is true that article 7092 requires the Secretary of State in May of each year to notify corporations which have "failed to pay such franchise tax on or before the first day of May" that unless the tax and penalty be paid before July 1st next following, their right to do business will be forfeited. Taken alone, this might be construed to mean that May 1st was the date of delinquency of all franchise tax payments. This article, however, is but remedial in character and an enforcement statute, and is a portion unchanged of the 1907 act which originally provided for payment of all such taxes in advance. It does not itself fix a date for payment nor for accrual of a penalty. This is done by articles 7084, as amended, and 7091. Articles 7091 to 7097 are all re-enactments of the 1907 act without change. While the Legislature could have been more specific in article 7091, in fixing the date when such penalties would accrue, after it had amended articles 7084 and 7089 as to first year permit corporations, it is to be noted that said article 7091, being the penalty provision of the franchise tax law, nowhere fixes May 1st or any definite date on which such penalty attaches. On the contrary, it provides that such penalty accrues when such corporation fails to pay its tax "when the same shall become due and payable under the provisions of this chapter." Such accrual of the penalty is therefore dependent upon and referable to other provisions of the statute which levy the tax and prescribe when it is "due and payable." And if the tax be not paid when such other provisions prescribe that it shall be paid,

then article 7091 becomes applicable and the penalty attaches.

If the May 1st construction contended for by appellee and apparently adopted by the trial court be adopted, it would lead to clearly unreasonable consequences, wholly at variance with the spirit and purpose of the franchise tax statutes and the manifest intent of the Legislature. This can be demonstrated by the following illustration: Suppose a foreign corporation is granted a permit to do business in Texas on February 15, 1938. The end of its first year's business, of course, would be February 15, 1939. If given the full ninety days in which to make its first report, such report could be filed as late as May 15, 1939. The next May 1st following, that would be in 1940, when, if appellee's contention be correct, would be the first date on which a penalty would accrue for failure to pay its tax. That is, it could continue to do business, without payment of such tax, for a period of two years and two and a half months before the state could pursue any remedy against it, manifestly an unreasonable and unwarranted construction of the statute which requires payment of such taxes in advance in all other instances.

██ Nor, in view of the analysis of said statutes above, do we think that they can be said to be "not sufficiently plain in meaning for those engaged in the line of industry affected" to understand their terms. See State v. International & G. N. Ry. Co., 107 Tex. 349, 179 S.W. 867.

██ While the rule is well settled that penal statutes must be strictly construed (see 39 Tex.Jur. § 146, p. 275), such construction will not be permitted to defeat the manifest intention of the Legislature. And where the legislative purpose and intent can be fairly and reasonably deduced from the language of the statute, when taken as a whole, such purpose and intent should be effectuated. Thompson v. Missouri, K. & T. Ry. Co., 103 Tex. 372, 126 S.W. 257, 128 S.W. 109. The intention of the Legislature, when fairly disclosed by the provisions of the law, is the matter of controlling concern. And when considered in its entirety, each article in relation to the others, we conclude that the law as to when such taxes were due and consequently when the penalty for nonpayment attached is unambiguous and sufficiently plain in meaning to inform appellee when payment of its tax should have been made; and that the Secre-

tary of State properly interpreted and applied it in the instant case.

It follows, therefore, that appellee was not entitled to recover the penalty paid by it under protest and that the trial court erred in rendering judgment in appellee's behalf. Appellants' motion is therefore granted, the former judgment of this court affirming the trial court's judgment is set aside, and judgment here rendered for appellants.

Motion granted. Judgment rendered for appellants.