**C. E. FULGHAM, Secretary of State, et al., Appellants,**

v.

**GULF, COLORADO & SANTA FE RAILWAY CO., Appellee.**

**No. 10380.**

Court of Civil Appeals of Texas.

Austin.

March 7, 1956.

Rehearing Denied March 28, 1956.

John Ben Shepperd, Atty. Gen., W. V. Geppert, L. P. Lollar and Henry Gates Steen, Asst. Attys. Gen., for appellants.

Wigley, McLeod, Mills & Shirley, Galveston, C. K. Richards, Austin, for appellee.

GRAY, Justice.

This suit was brought by appellee, Gulf, Colorado & Santa Fe Railway Company, against appellants, the Secretary of State, the Attorney General and the State Treasurer in their official capacities to recover franchise taxes and penalties paid under protest together with interest. A nonjury trial resulted in a judgment for appellee.

Appellee is a railroad corporation operating in Texas and other states. A portion of its lines of railroad in Texas extends through the counties of Hill, Bosque, Tom Green, Collin and Tarrant. The War Department of the Federal Government through its Corps of Engineers constructed dams and reservoirs for flood control and water conservation by reason of which portions of appellee's railroad lines in the above counties were affected and appellee was ordered and directed to relocate and reconstruct such lines. The lines were so relocated and reconstructed and the cost thereof was paid by the Federal Government. This cost exceeded the book value of the previously existing lines by $5,259,895.-87. In accordance with the requirements of the Interstate Commerce Commission, Sec. 20, 49 U.S.C.A. § 20, this sum of money was listed by appellee in its books and records as "Donations and Grants."

In due time appellee filed its franchise tax return for the year 1954 wherein it listed the above sum of $5,259,895.87 as "Donations and Grants" and paid its franchise tax based on a deduction of this amount. Thereafter the Secretary of State assessed appellee with an additional sum of $477.50 and penalties in the sum of $119.38, and also pursuant to Chapter 2, Art. III, Sec. 1, Acts of the 53rd Legislature, First Called Session, 1954, Vernon's Ann.Civ.St. art. 7084, assessed appellee with additional franchise taxes of which $286.50 was the amount assessed due to the value of appellee's relocated and reconstructed lines. The three sums of money set out supra were paid by appellee under protest. Art. 7057b, Vernon's Ann.Civ.St. Appellee paid the balance of the franchise taxes assessed against it but contended the sums paid under protest were not due and owing by it.

The facts show and the trial court found that the relocated railroad lines are 1.16 miles longer than the old lines; that some of the bridges and structures on the relocated lines are longer than those on the old lines; that the cost of maintaining the bridges, structures and roadbed on the relocated lines will exceed such costs on the old lines; that the relocated lines do not contribute to a more efficient operation of appellee's lines of railroad and will not produce any additional revenue to appellee.

Appellants and appellee agree that the question to be here decided is: Does the $5,259,895.87 constitute surplus within the meaning of the franchise tax statutes, Arts. 7084, 7084½ and 7089, Vernon's Ann.Civ. St.

So far as pertinent to our inquiry here Art. 7084, supra, provides that every corporation authorized to do business in Texas shall on or before May 1 of each year pay to the Secretary of State a franchise tax for the year following "based upon that portion of the outstanding capital stock,

surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures * * * and provided further that the tax shall in no case be computed on a sum less than the assessed value; for State ad valorem tax purposes, of the property owned by the corporation in this State. * * *"

Art. 7089, supra, provides that every corporation required to pay a franchise tax shall file with the Secretary of State a sworn report which "shall give the cash value of all gross assets of the corporation, the amount of its authorized capital stock, the capital stock actually subscribed and the amount paid in, the surplus and undivided profits or deficit, if any * * * the assessed value, for State ad valorem purposes of all property of the corporation, real, personal or mixed, owned by the corporation in this State. * * *"

Art. 7084½, supra, levies a franchise tax additional to those levied, due and payable under Art. 7084, supra.

"Surplus" is used in Art. 7084 and Art. 7089, supra, but the Legislature has not seen fit to define the term nor has the term as there used been defined by the courts of this State. However in United North & South Development Co. v. Heath, Tex.Civ.App., 78 S.W.2d 650, 652, er. ref., the term was applied to the facts before the court and it was said:

"As used in the franchise tax law in arriving at a proper meaning of that term, the purposes of the Legislature should be looked to. It is to be borne in mind that a franchise tax is not a tax upon the property of the corporation nor one upon its income, though both are to be regarded in measuring such tax, but a charge made by the state against the corporation for the privilege granted it to do business in the state. State ex rel. Marquette Hotel Inv. Co. v. State Tax Comm., 282 Mo. 213, 221 S.W. 721, 726; Southern Realty Co. v. McCallum, 5 Cir., 65 F.2d 934. Manifestly, as appears both from article 7084, R.S., as amended, and from

amended article 7089, R.S., prescribing the information such corporation is required to furnish the secretary of state, it was the purpose of the Legislature to levy against the corporation a tax commensurate with the value of the privilege granted, as that value is reflected by the information contained in the corporation's franchise tax report."

The Court further said:

"Since such tax is payable in advance, the state may, in computing such tax, look to the property owned by the corporation and available to it, for use during the ensuing year in carrying on its business. Such was clearly, we think, the legislative intent.

"In the instant case we think that any strict or technical definition of the term 'surplus' as used in the statute should not be applied, but one which would effectuate the legislative intent."

In Edwards v. Douglas, 269 U.S. 204, 205, 46 S.Ct. 85, 88, 70 L.Ed. 235, cited in United North & South Development Co. v. Heath, supra, Judge Brandeis discussed surplus of a corporation as used in the Federal Revenue Act and among other things said:

"The surplus account represents the net assets of a corporation in excess of all liabilities including its capital stock. This surplus may be 'paid-in surplus,' where the stock is issued at a price above par; it may be 'earned surplus,' as where it was derived wholly from undistributed profits; or it may, among other things, represent the increase in valuation of land or other assets made upon a revaluation of the company's fixed property."

■ The value of appellee's relocated and reconstructed lines is an increase in the value of its railroad lines used in conducting its business and therefore constitutes an increase in the value of its property or assets.

We think that the intent of the Legislature to include property values in computing

franchise taxes is made certain by the provisions of Arts. 7084 and 7089, supra. Both statutes mention the assessed value of the property and Art. 7084 provides that in no case shall the tax be computed on a sum less than such assessed value.

The parties agree that the Secretary of State is not bound by the bookkeeping rules and regulations of the Interstate Commerce Commission. However appellee says that the Railroad Commission of Texas on August 28, 1914 issued a rule for the classification of Texas railroad corporations, the same being Circular No. A–13, wherein it adopted "Classification of Accounts as prescribed by the Interstate Commerce Commission in accordance with Section 20 of the act to regulate commerce, issue of 1914."

The statutes, Art. 6466 et seq., Vernon's Ann.Civ.St. authorize the Railroad Commission to prescribe a method to be followed by railroads in keeping accounts in order that the Commission may properly regulate the matters which are within its authority, such as rates, etc. Texas & P. Ry. Co. v. Railroad Commission, 105 Tex. 386, 150 S. W. 878. However there has not been called to our attention any rule, regulation or law requiring the Secretary of State to apply the above classification of railroad property in computing franchise taxes.

Appellee further says that the question presented is: Does appellee come within the statutory provisions imposing the tax as to the $5,259,895.87 in question? and says that because the question is open to doubt that the doubt should be resolved in favor of the taxpayer and cites Carpenter v. Bass, Tex. Civ.App., 142 S.W.2d 406. Affirmed Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567. We think an application of this rule of law to the facts here is not called for because if what we have already said is correct then doubt does not exist.

The franchise tax in the amount of $477.-50 was not paid when due as provided by Art. 7084, supra, and appellee became liable to the penalty assessed by Art. 7091 which provides:

"Any corporation * * * which shall fail to pay any franchise tax provided for in this Chapter when the same shall become due and payable under the provisions of this Chapter, shall there- upon become liable to a penalty of twenty-five per cent (25%) of the amount of such franchise tax due by such corporation. * * *"

The statute assesses the penalty for the failure to pay the tax when due and the Secretary of State is not vested with discretion in the matter or compelled to notify the party in default before such penalty accrues. Clark v. International Harvester Co., Tex.Civ.App., 115 S.W.2d 1022, er. ref.

The judgment of the trial court is reversed and judgment is here rendered that appellants recover of appellee the sums of money supra paid by appellee under protest.

Reversed and rendered.

HUGHES, Justice (concurring).

In testing appellee's main contention I have assumed the opposite fact situation from the one presented. If instead of increasing the value of appellee's facilities by over five million dollars through relocation of certain lines the value of such facilities had been diminished by five million dollars it seems certain to me that appellee would have demanded and would have been entitled to receive a pro tanto decrease in its franchise tax liability. The rule should work both ways.

The Heath case cited by the Court is also authority for holding immaterial the manner in which this item was carried by appellee on its books.