RG
12



# THE ATTORNEY GENERAL

# OF TEXAS

**AUSTIN, TEXAS 78711**

JOHN L. HILL
ATTORNEY GENERAL

July 11, 1973

Honorable Robert S. Calvert
Comptroller of Public Accounts
State of Texas
Austin, Texas

Opinion No. H-62

Re: Whether reserve for
relining furnace is to
be included as part of
surplus of corporate
taxpayer in computing
franchise tax.

Dear Mr. Calvert:

The question here presented is whether a reserve account for relining furnaces used in the steel production process is to be included as part of the "surplus" of the corporate taxpayer in computing the Texas Franchise Tax under Article 12.01, Title 122A, Taxation-General, V. T. C. S. The firebrick used to line the furnaces progressively deteriorates with use necessitating a relining of the furnaces approximately every five years and the reserve account is used to provide the funds necessary for this purpose. The cost value of the firebrick lining of the furnace is reflected on the corporate books as a fixed asset which contributes to the surplus of the corporation.

Article 12. 01 defines "taxable capital" upon which the franchise tax may be computed, as including the stated capital, <u>surplus</u>, and undivided profits.

"Surplus" as so used is not defined.

"The Legislature did not undertake to define what is meant by the term 'surplus.' In a generally accepted commercial sense, it usually applies to funds remaining on hand after fixed charges or liabilities have been deducted. As applied to corporations, it has been held to be the value of all the corporation's assets after its liabilities, including its capital stock, have been deducted. <u>Willcuts v. Milton</u>

> Dairy Co., 275 U.S. 215, 48 S. Ct. 71, 72 L. Ed.,
> 247. Judge Brandeis, discussing the term as used
> in the Federal Revenue Act, used the following lan-
> guage in Edwards v. Douglas, 269 U.S. 205, 46 S.
> Ct. 85, 88, 70 L. Ed. 235; 'The word "surplus" is
> a term commonly employed in corporate finance
> and accounting to designate an account on corporate
> books. But this is not true of the words "undivided
> profits." ' The surplus account represents the net
> assets of a corporation in excess of all liabilities
> including its capital stock. This surplus may be
> 'paid in surplus,' as where the stock is issued at
> a price above par; it may be 'earned surplus,' as
> where it was derived wholly from undistributed
> profits; or it may, among other things, represent
> the increase in valuation of land or other assets
> made upon a revaluation of the company's fixed
> property." United North and South Development
> Co. v. Heath, 78 S. W. 2d 650 (Tex. Civ. App.,
> Austin, 1934, error ref.) (emphasis added)

Section (12) of Article 1.02, Texas Business Corporation Act, V. T. C. S.,
defines "Surplus" as:

> ". . . the excess of the net assets of a corporation
> over its stated capital." (emphasis added)

The Comptroller of Public Accounts in Ruling No. 9 of 1961, amended
June 1965, and filed with the Secretary of State in June, 1965, states:

> "Surplus, as defined in Article 1.02, Business
> Corporation Act, V. A. T. S., is 'the excess of the
> net assets of a corporation over its stated capital.'
> Surplus, therefore, will include all surplus accounts
> carried on the books, such as earned surplus, sur-
> plus from appreciation of assets, contributed surplus,
> capital or paid in surplus and 'reduction surplus'

> created by or arising out of a reduction of stated
> capital by any of the methods authorized by the
> above Act. It will also include all surplus reserves
> no actual accrued liabilities. . . ." (emphasis added)

This represents the administrative construction of the term "surplus" as used in Article 12.01.

Net assets are defined as the amount by which the total assets of a corporation exceed the total debts of the corporation. Art. 1.02 (10), Business Corporation Act.

In Huey & Philp Hardware Co. v. Shepperd, 251 S. W. 2d 515 (Tex. 1952), a reserve for bad debts was allowed as a deduction to reflect the decrease in net asset value. On the other hand, the Court of Civil Appeals in United North and South Development Co. v. Heath, supra, held that a revaluation of oil properties upward to reflect their true value was a proper part of the corporation's surplus. And see Fulgham v. Gulf, C. &S. F. Ry.Co., 288 S. W. 2d 811 (Tex. Civ. App., Austin, 1956, error ref., n. r. e.).

In order to arrive at this net asset value, depreciation accounts have long been allowed by the Comptroller of Public Accounts as a deduction. Such accounts theoretically are used to replace depreciable assets at the end of their useful service life. This also is the purpose of the Reserve Acount for Relining Furnaces here involved. The firebrick lining of the furnaces deteriorates through its use over a five year period and must then be replaced. The reserve account performs the same function as a depreciation account and, in our opinion, it likewise should be allowed as a deduction from "surplus." Such a deduction reflects the loss in value of the firebrick lining shown otherwise on the corporate books at its cost value.

Of course, if any other depreciation account exists regarding the value of this same asset, a double deduction would result which is not allowed. Huey & Philp Hardware Co. v. Shepperd, supra. It is our understanding that no such other account exists, but that the reserve account performs this function. We also assume that the amount in the reserve account is a true reflection of the depreciated value of the firebrick lining.

In <u>City of Columbus v. Public Utilities Commission</u>, 93 N. E. 2d 693 (Ohio 1950), a "depreciation reserve" was described as:

> ". . . an accounting technique whereby a fund is built up from annual contributions, as an item of expense of operation, over a period of time representing the service life of . . . [an asset] . . . to offset and to equal in value the ultimate loss through use of the . . . [asset] . . . so that at the end of such service life the depreciation reserve fund will replace the property so worn out by the various factors of depreciation. . . ." (at p. 701)

Here the reserve account for relining of the furnaces performs the same function and should be treated as a depreciation type account that may be deducted from "surplus" as that term is used in Article 12.01, supra.

## SUMMARY

A reserve account for firebrick relining of furnaces used in steel production that must be performed approximately every five years, and which reflects the reduced value of the firebrick lining is a depreciation account that may be deducted from "surplus," as that term is used in Article 12.01, Title 122A, Taxation-General, V. T. C. S., in computing the Texas Franchise Tax. This conclusion assumes this reserve account is the only depreciation deduction taken on the capitalized cost value of the firebrick lining and that it correctly reflects the depreciated value of such property lost through and by virtue of its use in the steel production process.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:


LARRY F. YORK, First Assistant


DAVID M. KENDALL, Chairman
Opinion Committee