

# THE ATTORNEY GENERAL

## OF TEXAS

JOHN L. HILL
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

April 20, 1976

The Honorable Garrett Morris
Chairman
Public Utility Commission of
    Texas
P. O. Box 12577
Austin, Texas 78711

Opinion No. H- 811

Re: Assessments of
utility companies under
the Public Utility Regu-
latory Act.

Dear Mr. Morris:

You have requested our opinion concerning the construc-
tion of various sections of the Public Utility Regulatory
Act, article 1446c, V.T.C.S.

Your first question is:

> Section 79 of Article XII of the Act
> states that all assessments are due on
> August 31 of each year. Does Section 79
> require payment of the assessment on
> August 31 of each year or may the Com-
> mission grant a grace period after the
> due date for payment of the assessment
> without penalty. Does the term "due"
> mean due and payable or accrue?

The Act provides:

> Sec. 78. An assessment is hereby
> imposed upon each public utility within
> the commission's jurisdiction serving
> the ultimate consumer equal to one-sixth
> of one percent of its gross receipts
> from rates charged the ultimate consumers
> in Texas for the purpose of defraying

the costs and expenses incurred in the administration of this Act. Thereafter the commission shall, subject to the approval of the Legislature, adjust this assessment to provide a level of income sufficient to fund commission operation.

Sec. 79. All assessments shall be due on August 31 of each year. Any public utility may instead make quarterly payments due on August 31, November 30, February 28, and May 31 of each year. There shall be assessed as a penalty an additional fee of 10 percent of the amount due for any late payment. Fees delinquent for more than 30 days shall draw interest at the rate of six percent per annum on the assessment and penalty due.

In our view the clear implication of section 79 is that the assessments are to be paid on or before the dates listed. Thus, the term "due" in section 79 means "due and payable" and not merely "accrue." See Southern Pac. Co. v. Maricopa County, 107 P.2d 212 (Ariz. 1940). Accordingly, the Commission may not grant a grace period after the due dates provided in section 79 for payment of the assessment without penalty.

Your second question is as follows:

Section 79 of Article XII allows Utility Companies to elect to pay the assessment due in quarterly payments.

. . .

(b) May the Commission implement a rule requiring the utility to elect either quarterly payment or annual payments for an entire assessment or fiscal year?

(c)   Does this provision allow a
utility to pay the tax due August 31,
1976, in quarterly payments during
the following assessment or fiscal
year?

(d)   May the Commission assess a
penalty for late quarterly payments
if the utility has made an election
to make quarterly payments?   When
does a payment become late?

We believe section 79 contemplates an election on the
part of the utility.   Section 79 clearly provides that
quarterly payments are due on August 31, November 30, Febru-
ary 28, and May 31.   While the utility may choose either
quarterly or yearly payments, the Commission must be in a
position to know which method is selected.   Thus, we believe
the Act requires a formal election by the various utilities
under such regulations as the Commission promulgates.   Such
regulations in our view may permit a utility to change
methods on reasonable notice.   Once a method is selected,
the Act clearly requires payment on or before the dates
listed.   Any payment not paid on or before its due date
becomes late at the expiration of that day.

You have also asked whether section 79 would require
quarterly payments to be made before or after the end of the
year on which the assessments are based.   In our view the
Commission is not required to establish only an annual
accounting period on which to base assessments.   We believe
in establishing a system of quarterly payments the Legisla-
ture gave the Public Utility Commission the authority to
establish reasonable regulations tied to the quarterly
payment schedule.   Accordingly, while the annual payments
would be tied to an annual accounting period, those companies
which choose to pay quarterly may be requested by the Com-
mission to utilize a reporting period of less than a year.
Thus, the utilities choosing to make quarterly payments
could be subject to a different reporting period, not nec-
essarily the same as the reporting period utilized by those
companies paying the assessment annually.

Your next question is:

> May the Commission under Article XII,
> implement by rule, a calculable period
> of time for the assessment which is
> different from the due date stated in
> Section 79 of the Act?  When does the
> assessment begin to accrue?

Section 78 provides in part that "an assessment is hereby imposed. . . ." Since the act became effective September 1, 1975, the assessment was imposed beginning that date. In other words, the assessment began to accrue on receipts received on or after September 1, 1975.  However, the Act does not specify a particular period upon which the assessment is calculated.  We believe the general authority of the Commission is broad enough to enable the Commission to determine the calculable period because such a determination is necessary and proper to the fulfillment of its statutory duties.  See Terrell v. Sparks, 135 S.W. 519 (Tex. Sup. 1911); Corzelius v. Railroad Commission, 182 S.W. 2d 412 (Tex. Civ. App. -- Austin 1944, no writ); secs. 16, 37. We do not believe the Commission is required to use the due dates as the final dates of the calculable periods, and it would seem impractical to do so.  See Clark v. International Harvester Co., 115 S.W. 2d 1022 (Tex. Civ. App. -- Austin 1938, writ ref'd).

You next ask:

> Section 78 requires the assessment to be
> levied on the rate charged to the ultimate
> consumer.  Does the term "rate" apply
> only to services charged the ultimate
> consumer or does the term include any
> federal, state, or local taxes (including
> the assessment itself) charged the
> ultimate consumer?  Does the term "rate"
> apply to all services including lease or
> sale charges or does it apply only to
> charges for utility service?

Section 3(d) of the Act provides:

> The term "rate," when used in this Act,
> means and includes every compensation,
> tariff, charge, fare, toll, rental, and
> classification, or any of them demanded,
> observed, charged, or collected whether
> directly or indirectly by any public
> utility for any service, product, or
> commodity described in Subdivision (c)
> of this section, and any rules, regula-
> tions, practices, or contracts affecting
> any such compensation, tariff, charge,
> fare, toll, rental, or classification.

Thus, the term "rate" is given a rather broad definition. It includes "every compensation. . .for any service, product, or commodity described in [section 3(c)]. . . ." "Rate" would therefore include lease or sale charges involved in any activity described in section 3(c). Of course, section 78 provides for an assessment on "gross receipts from rates charged the ultimate consumers in Texas." Thus, the receipts from any charges, including sale or lease charges, will be assessable only if they are receipts from the ultimate consumer of the service, product, or commodity involved. For example, the sale of equipment from one public utility to another will result in receipts assessable to the seller only if the buyer utility is the ultimate consumer of the equipment, and will not be so if the equipment is purchased for resale or lease to a consumer other than the buyer utility.

Another part of this question concerns taxes collected by utilities. In our opinion those taxes which are levied on consumers and merely collected by utilities as agents for the respective taxing authorities cannot be deemed "receipts" of the utilities. Accordingly, these taxes are not assessable. However, in our opinion, a public utility may not deduct charges which represent taxes or assessments levied on the utilities and passed on to its customers. Such charges remain a part of the rates charged by the utility and are receipts of the utility. Consequently, in our opinion, those receipts must be assessed.

Your final question is:

> Section 78 requires an assessment "upon
> each public utility within the Commission's
> jurisdiction."  The Commission has
> various kinds of jurisdiction over
> various kinds of utilities in several
> different subject matter areas.  May the
> Commission make assessment on any utility
> over which it exercises any type of
> jurisdiction, or may the Commission only
> levy the assessment on utilities over
> which it has rate making jurisdiction?

The quoted language of section 78 is unqualified.  Consequently, the Commission need not exercise any particular form of jurisdiction over a utility in order to assess the utility.  In our view, the term "Commission's jurisdiction" may best be defined by reference to article III of the Act, entitled "Jurisdiction."  Therein the Commission is given jurisdiction over various utilities.  Secs. 17, 18. Section 19 provides for Railroad Commission jurisdiction over gas utilities.  In our opinion, the utilities dealt with in sections 17 and 18 are within the "Commission's jurisdiction" under section 78; those dealt with in section 19 are not.  We note, however, that the assessment applies only to public utilities which are defined in section 3(c) of the Act.

### S U M M A R Y

The dates provided in section 79 of
the Public Utility Regulatory Act are
the dates upon which payments of assess-
ments are due.  A payment becomes "late"
at the expiration of its due date.  A
utility must elect to pay its assessment
yearly or quarterly.

The assessment began to accrue on
September 1, 1975.  The Commission may
select a calculable period for assess-
ments which is different from the due
dates contained in section 79.

The assessment is to be made on "receipts from rates charged the ultimate consumers in Texas," including all such charges which are not collected by a public utility as the agent of a taxing authority.

All public utilities subject to the Commission's jurisdiction under sections 17 and 18 are subject to assessment.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb