WILLIAM ZAKON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5450. Promulgated July 22, 1927.

1. A license to sell liquor in the City of Boston, which, under a long continued custom, entitled the holder to a renewal from year to year and which renewal privilege was valuable, is property.

2. Petitioner purchased such a license in 1911, paying $11,000 for the renewal privilege. The value thereof was greater on March 1, 1913, than the cost. The license continued to have a substantial value which attached to the renewal privilege until 1919, when it became worthless because of national prohibition. *Held*, that petitioner sustained a loss in 1919 measured by the cost of the property to him.

3. No deduction may be allowed for loss of good will value in the absence of any evidence of cost.

*Harry Friedman, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

This is an appeal from the determination of deficiencies in income tax as follows: For the year 1919, $5,803.06; for the year 1920, $22.15; and for the year 1921, $14.03. Errors in determining the deficiency .for 1919 are alleged by the petitioner as follows:

(1) The March 1, 1913, value of the liquor license of the taxpayer was erroneously determined by the Commissioner as $13,000 instead of $35,000.

(2) Failure of the Commissioner to allow any deduction for obsolescence of the petitioner's good will, which had a value of $10,000 on March 1, 1913.

(3) Failure of the Commissioner to allow the March 1, 1913, value of the liquor license as a deduction for obsolescence in 1919.

(4) Erroneous spreading of obsolescence deductions over a period of from March 1, 1913, to January 16, 1920.

### FINDINGS OF FACT.

The petitioner is an individual, residing at Roxbury, Mass. In 1911 he purchased for $11,000 from one Harding, in the City of

Boston, a liquor license of the fourth class, which gave him the right to sell liquor in bottles in any quantity. Harding continued in business under this license until April 1, 1911. During April, 1911, the license was transferred to petitioner by the license board of Boston and he began doing business under the license May 1, 1911. The purchase price did not include any stock or fixtures and, upon acquiring it, the business was moved to a new and different location and fixtures and improvements were installed by the petitioner at a cost of more than $2,500.

Under the law of the Commonweath of Massachusetts the number of liquor licenses issued in the City of Boston was limited to 1,000. The license board of Boston had limited the number to 984. Such licenses were issued annually, on May 1, upon payment of the yearly fee, which varied from 1911 to 1919 from $12,000 to $14,000. It was the practice of the license board of Boston to issue annual licenses only to the holders of old licenses unless refused for cause. If the holder of a license sold or transferred such license to another acceptable party, the transferee had a preferred status before the license board as the holder of such license. This practice made such licenses valuable and they commanded high prices from persons desiring to go into the liquor business. On March 1, 1913, the license of the petitioner had a fair market value of over $11,000. The license continued to have a substantial value until after January 1, 1919.

Petitioner continued in the liquor business, renewing his license annually until June 30, 1919, when he was forced to discontinue on account of prohibition legislation. He thereupon procured a license for selling 2¾ per cent beer in bottles. This business was discontinued in October, 1919, when it was determined that sale of such beer was unlawful.

The petitioner did a large wholesale business and had special trade-marks and trade brands of liquors which he advertized and used in his business. He had a large foreign trade with Poles, Lithuanians, Russians, and Jews, all of which languages he spoke. His location near Haymarket Square was particularly good for this class of trade.

In his determination of the tax due from petitioner for 1919, the Commissioner allowed a value of $13,000 for the liquor license as of March 1, 1913, but prorated this amount over the period from March 1, 1913, to January 16, 1920, allowing $1,888.15 as a deduction in 1919. In his answer he concedes this method to be in error, but contends that the value of the liquor license on January 1, 1919, was not in excess of $1,970.92. He refused to allow any deduction for the obsolescence of good will in 1919.

The net income for 1919 determined by the respondent and upon which he computed the deficiency, was $57,852.91.

OPINION.

PHILLIPS: It appears that in 1911 and prior thereto the number of liquor licenses which might be issued in the City of Boston was limited by the laws of Massachusetts to not more than 1,000 and that such number might be further limited by the licensing board of the City of Boston in its discretion. This board did limit the number to 984 and refused to issue any larger number. While such licenses were issued annually, expiring on May 1 of each year, it was the established custom of the board to issue such annual licenses to the holders of licenses for the previous year. The holders of any license might transfer it to another, to whom a new license would be issued by the license board, if the purchaser were found to be acceptable by the board. Under such circumstances the holder of such a license had an asset which had a value entirely separate and distinct from the right to conduct the business of a liquor dealer for the remainder of the year for which such license was issued. The courts have recognized that such value existed and constituted property rights. See *Tracy* v. *Ginzberg*, 205 U. S. 170, where the court said:

> Because of the large surrender value of old licenses and of the long continued custom of reissuing licenses to old holders until refused for cause, such licenses have been recognized by the courts of Massachusetts as property rights.

In 1911 the petitioner purchased such a license to operate in the City of Boston from one Harding, paying therefor $11,000. The transfer was made to the petitioner in April, 1911, at which time the annual license had less than one month remaining. The petitioner never operated under such annual license but, by reason of its ownership, was enabled to secure the annual license under which he began operations on May 1, 1911. These facts conclusively show that the $11,000 was not paid by the petitioner to Harding for the right to operate during the remaining period which the annual license had to run but was paid in order that the petitioner might be placed in a position where he could thereafter secure annual licenses by payment of the prescribed fee. This intangible right which appertained to the ownership of the annual license continued in the petitioner through 1913 and on March 1 of that year had a value in excess of the amount paid in 1911.

It is the claim of the petitioner that the March 1, 1913, value of his license was $35,000 and that on that date his business had a good will value of $10,000, all of which were destroyed in 1919 as the result of prohibition legislation. He contends that in computing his

net income for 1919 he is entitled to a deduction of such March 1, 1913, value either under the provisions of section 214(a)(4) or of section 214(a)(8) of the Revenue Act of 1918, which subsections provide for the deduction of:

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise if incurred in trade or business.

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

The last-quoted provision of the Act indicates that it is intended to care for losses of capital which took place over a longer period than the taxable year. There is nothing in the record in this case which would indicate that there was any exhaustion, wear and tear, or obsolescence of either the license or the good will prior to the taxable year involved. In fact the testimony here is to the contrary. It all indicates that any loss or damage which was sustained by this petitioner occurred in the year 1919. We therefore conclude that the taxpayer has not brought himself within subparagraph (8) of section 214 of the Act, quoted above.

It does appear, however, that the taxpayer sustained a loss in 1919 which he is entitled to deduct under the provisions of subparagraph (4) of the section of the Act quoted above. The deduction, however. is not measured by the March 1, 1913, value as contended by the petitioner, but is limited to the actual loss sustained. *United States* v. *Flannery*, 268 U. S. 98; 5 Am. Fed. Tax Rep. 5373; *McCaughn* v. *Ludington*, 268 U. S. 106; 5 Am. Fed. Tax Rep. 5376. The license cost the petitioner $11,000 in 1911. In 1913, it had a value in excess of that amount. In 1919, it became worthless. The taxpayer sustained a loss of $11,000 which is deductible in 1919. The good will. however, appears to have cost the taxpayer nothing and under the decisions quoted there is no deductible loss on account of that item.

> *Decision will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE and MILLIKEN.