McAVOY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9216.   Promulgated February 27, 1928.

*Edward G. Ince, Esq.*, for the petitioner.
*J. D. Foley, Esq.*, for the respondent.

1018

OPINION.

LITTLETON: The first issue concerns the claim of petitioner for a deduction from gross income as a loss under section 234 (a) (4) of the Revenue Act of 1918, or as obsolescence under section 234 (a) (7) of the same Act, on account of renewal rights which became of no value when prohibition became effective.

Substantially this same question was before the Board in *William Zakon*, 7 B. T. A. 687, wherein a deduction as obsolescence was denied, but a deduction as a loss was allowed in the year in which the renewal rights became worthless. In so far as the obsolescence feature is concerned, there can be no question that the same considerations which resulted in the denial of the claim in the *Zakon* case are equally applicable in this proceeding. Petitioner's contentions on this point are therefore denied.

With respect to the deduction as a loss, we are likewise of the opinion that the holding in the *Zakon* case is controlling as to this issue. The *Zakon* case involved so-called renewal rights of saloon licenses under the laws of Massachusetts, whereas this proceeding involves similar rights under the laws of Illinois. In each case the saloon license was issued for a limited period and the licensee had no legally enforcible right to a renewal of such license. In both cases the renewal of the license rested entirely within the discretion of the administrative authorities, and in both cases it had been the practice of such administrative authorities to issue licenses to the holders of the old licenses. In both instances the practice of issuing the new license to the holder of the old license had become so well established that these renewal rights were considered very valuable and were bought and sold with the full knowledge and consent of the city authorities.

In the opinion of the Board, the contention advanced by the respondent that a loss can not be allowed since the petitioner did not own property which it lost when prohibition became effective, is unsound. While that which petitioner lost may not conform to some technical definitions of property, it can not be denied that the petitioner acquired something of value which it subsequently lost. In the business which petitioner conducted, it was highly essential that it have a market for its product. One of its principal markets was the saloon, but it was not permitted to hold a saloon license or operate a saloon. What it did, therefore, was to purchase these renewal rights and it was thereby in a position to have the saloon licenses issued to persons who would agree to purchase its product. By this means petitioner's income was increased. When the " War-time Prohibition Act " became effective and prohibited the manufacture and sale of petitioner's product after June 30, 1919, whatever rights or privileges it formerly enjoyed with respect to these renewal rights were no longer of value. Petitioner paid substantial amounts for these assets, and this investment was lost when prohibition became effective and their use or value to it ceased to exist.

We think the point that the laws of Illinois prohibited the issuance of saloon licenses to a corporation is immaterial. It was not the saloon license which the petitioner purchased and owned, but rather the renewal rights in connection with the issuance of saloon licenses. The facts that the license itself could not be issued to the petitioner and that the assignment of a renewal right had to be made in the name of some one other than the petitioner, do not alter the fact that, through the means adopted, which were known and recognized by the city of Chicago, the petitioner came into enjoyment of valuable assets which became worthless when prohibition became effective.

In view of the foregoing, the Board is of the opinion that the petitioner suffered a loss in the fiscal year ended September 30, 1919, which is deductible under the provisions of section 234 (a) (4) of the Revenue Act of 1918. Since the cost of the renewal rights, $130,387.11, is less than their fair market value on March 1, 1913, the amount deductible is the cost of the property. *United States* v. *Flannery*, 268 U. S. 98.

The Board is also of the opinion that the claim of the petitioner for the inclusion in invested capital of the cost of these renewal rights must likewise be sustained. By the expenditure of $130,-387.11, the petitioner acquired assets that were productive of a part of the income now being taxed. While it is true that the petitioner did not thereby acquire a right under which it could compel the renewal of these licenses from year to year, under the policy pursued by the administrative officials charged with the duty of issuing licenses, the renewal rights became of value. The petitioner, in common with others, paid substantial amounts to secure these rights because they were valuable incidents to the production of income not only in the year when acquired, but for the succeeding years until prohibition became effective. To say that the costs of such income-producing factors do not represent capital expenditures within the meaning of the Revenue Act of 1918 is going to an extent which we do not feel is justified, and, accordingly, the petitioner's contention on this point is sustained.

Petitioner next contends that the respondent erred in disallowing a deduction on account of certain bottles and cases, and a dealcoholizing plant which are claimed to have been abandoned upon the advent of prohibition.

The material facts with respect to the bottles and cases are that on June 30, 1919, the petitioner had on hand a larger supply of bottles and cases than was then required in the conduct of its business. These articles were placed in storage and there kept until 1923, when the building in which they were stored was demolished. At that time the bottles that were in cases were removed to another place where they remained until sold in 1925 for a small amount as compared with their total cost. The bottles in bulk were apparently destroyed when the building in which they were stored was demolished in 1923. Little, if any, effort was made to dispose of these articles, at least until sometime subsequent to the year in which the loss is claimed. At the time these bottles were placed in storage, the petitioner was engaged in the "near beer" business in which this same type of bottle was used.

The situation was similar with respect to the loss claimed on the dealcoholizing plant. Prior to June 30, 1919, petitioner had this

plant which was used to dealcoholize beer and make it suitable for sale in what was then "dry" territory. On July 5, 1919, another similar plant of double the capacity of the old was completed, which differed from the first plant, in so far as the record shows, only as to its capacity and in that the first plant would not reduce the alcoholic content of beer to one-half of one per cent. The first plant was disconnected in so far as engines, pumps and electrical current were concerned, but otherwise kept intact. The engines and pumps were kept oiled and greased, and apparently the rest of the plant was kept in good condition. It could have been connected up within a week's time. The plant has not been in operation since its operation was discontinued in 1919.

Under the foregoing facts, the Board is of the opinion that the petitioner has failed to establish that either the bottles and cases or the dealcoholizing plant was abandoned or discarded in the fiscal year ended September 30, 1919, to the extent necessary to permit a deduction of their cost under the statute. Although these properties have not been used since the date when it is contended their use was abandoned, the facts strongly indicate that they could and would have been used had petitioner's "near beer" business increased, instead of decreased. They were at all times retained in readiness for use in much the same manner that emergency equipment is frequently kept by prudent operators in other lines. The property was neither abandoned nor sold. That its usefulness to petitioner at the time was less than when purchased, or constructed, is not sufficient to warrant a deduction as a loss. While the old still formerly used in manufacturing beer would not reduce the alcoholic content of beer to as low as one-half of one per cent, it does not appear that if occasion had required this still could not have been used by petitioner in its manufacturing operations in connection with its new dealcoholizing plant. In any event, the plant was kept in good condition so that it could be made ready for use on short notice, and, consequently, it seems unreasonable to say that it had been discarded or abandoned for further use in petitioner's business. The situation is somewhat similar to that before the Board in *Marigold Garden Co.*, 6 B. T. A. 368, wherein we said:

It seems clear that property is not *ipso facto* lost to a taxpayer because it is no longer useful to him. Ownership and possession still exist, and in some cases value may not wholly disappear. Value and usefulness are not necessarily interdependent, even though they very commonly look to each other for support. The want of either does not make certain the absence of the other. It should be kept in mind that the considerations in ascertaining net income must always be expressed in money and that all the factors relied upon must be translated into terms of money. Use is only significant to the extent that it is susceptible of such expression. No one would urge that an income deduction may be claimed because a fixture or tool proves less useful than expected when the purchase was

made. Until the investment is converted into terms of money by sale or other disposition or its worthlessness otherwise demonstrated, there is neither loss nor gain and income is neither greater nor less.

So when we put aside the legislative cause of petitioners' misfortune, and find further that the evidence shows only that the glass could no longer be used by petitioner in its business, we are still far removed from the establishment of such a loss as offsets income. It is not necessary to consider whether we should be brought closer if no sale or disposition could have been made after reasonable effort, for there is no evidence of an effort; and voluntary storage is not a final disposition. The respondent is on this point sustained.

In view of the foregoing, the action of the Commissioner in denying a loss on the cases and bottles and on the dealcoholizing plant is sustained.

*Judgment will be entered on 10 days' notice, under Rule 50.*