## UNITED NORTH & SOUTH DEVELOPMENT CO. v. HEATH, Secretary of State, et al.

### No. 8141.

Court of Civil Appeals of Texas. Austin.
Dec. 12, 1934.

Rehearing Denied Jan. 9, 1935.

E. E. Weiss, and R. B. Ellis, both of San Antonio, for appellant.

Jas. V. Allred, Atty. Gen., and Sidney Benbow and Wm. N. Sands, Asst. Attys. Gen., for appellees.

Karl F. Griffith, Roy C. Coffee, and Jack Toone, all of Dallas, amici curiæ.

BAUGH, Justice.

Appellant, a foreign corporation, sought a permanent injunction against the secretary of state and the Attorney General to restrain a threatened cancellation of its permit to do business in Texas and the collection by the state as a franchise tax an amount in excess of what appellant contends is due by it under the franchise tax law. Though the relief sought was refused, the court continued in force, pending the disposition of this appeal, the temporary injunction theretofore granted.

The case was tried to the court upon an agreed statement of facts, and those material to the issues here presented are substantially as follows:

The appellant is a Delaware corporation, with an authorized capital of $2,500,000, only $2,137,660 of which has been issued, and having a permit to do business in Texas. Pursuant to articles 7084 and 7089, R. S., as amended by Acts 1931, 42d Legislature, p. 441, c. 265, §§ 1 and 2 (Vernon's Ann. Civ. St. arts. 7084, 7089), appellant, on March 15, 1933, filed with the secretary of state, on forms prescribed by him, its annual franchise tax report, and tendered the sum of $941.41 as the amount of the franchise tax due by it for the

ensuing year. The secretary of state refused to accept that amount as full payment, placed same in a suspense account, and notified the corporation that it owed the sum of $8,147.40, to which a penalty of 25 per cent. would be added if not paid on or before May 1, 1933. The amount in excess of $941.41 appellant protested and refused to pay. Thereafter the secretary of state added the 25 per cent. penalty to the amount demanded, making such total claimed against appellant $9,007.50, and notified the appellant that, unless same were paid by July 1, 1933, its permit to do business in Texas would be forfeited; hence this suit.

The report made to the secretary of state, excluding the item which gave rise to this controversy, showed a tax due of only $941.40. There was shown in said report, however, an item listed as "appreciated surplus" belonging to said corporation, aggregating $24,019,381, which item the secretary of state evidently considered as a "surplus" of said corporation, under the provisions of amended articles 7084 and 7089, R. S., and the tax demanded was computed on it as such. The controlling issue in the case is whether or not said item, listed by appellant in its report to the secretary of state as "appreciated surplus" of said corporation, is to be included in computing the amount of the franchise tax due by the corporation under the provisions of article 7084, R. S., as amended.

The item in question represented an oil lease owned by appellant on some 10,000 acres of land in Matagorda county, Tex. From tests made, appellant's geologist estimated that some 2,080 acres were oil producing. An 1,800-barrel well was brought in thereon on September 11, 1932. With a view to selling additional capital stock in Texas, and in compliance with article 588, R. S., of the Blue Sky Law, the geologist of appellant, in a sworn statement as to appellant's solvency, filed with the secretary of state, December 20, 1932, estimated the potential production of said area at 40,000 barrels per acre, and that, after deducting cost of production, same would net appellant company a return of $42,120,000. This estimate was concurred in in a sworn statement of the vice president and assistant treasurer of appellant, dated December 30, 1932, and filed with the secretary of state. As of December 31, 1932, appellant entered upon its books an increased valuation of said property, under the caption of "Unrealized Appreciation," in the sum of $24,337,121.77; and in its report to the secretary of state for franchise tax purposes said item was reported as "unrealized appreciation" in the sum of $25,702,747.81. The record also discloses that appellant advertised said property for sale in the Oil and Gas Journal of October 6, 1932, at a minimum price of $20,000,000, half to be paid in cash and the remainder in oil to be produced therefrom. Up to December 31, 1932, appellant had invested in said property only the sum of $172,599.05, and had realized to that date from oil production therefrom a net profit, over cost of production, in the sum of $54,881.58.

It is appellant's contention that said item represented merely an estimated surplus, or hoped for gain, which might or might not be realized in the future under the contingencies and uncertainties of developing a newly discovered oil field; and could not, therefore, be properly included as surplus of the corporation as a basis for calculating a franchise tax due by it to the state.

The franchise tax due by appellant, fixed at the rate prescribed in amended article 7084, R. S. (Vernon's Ann. Civ. St. art. 7084), is "based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, other than those maturing in less than a year from date of issue, as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business," etc. Though a foreign corporation, in the instant case it appears that the entire business of the appellant was done in Texas and the matter of such ratio is not material here.

The Legislature did not undertake to define what is meant by the term "surplus." In a generally accepted commercial sense, it usually applies to funds remaining on hand after fixed charges or liabilities have been deducted. As applied to corporations, it has been held to be the value of all the corporation's assets after its liabilities, including its capital stock, have been deducted. Willcuts v. Milton Dairy Co., 275 U. S. 215, 48 S. Ct. 71, 72 L. Ed. 247. Judge Brandeis, discussing the term as used in the Federal Revenue Act, used the following language in Edwards v. Douglas, 269 U. S. 205, 46 S. Ct. 85, 88, 70 L. Ed. 235: "The word 'surplus' is a term commonly employed in corporate finance and accounting to designate an account on corporate books. But this is not true of the words 'undivided profits.' The surplus account represents the net assets of a corporation in excess of all liabilities including its capital stock. This surplus may be 'paid-in surplus,' as where the stock is issued at a price above par; it may be 'earned sur-

plus,' as where it was derived wholly from undistributed profits; or it may, among other things, represent the increase in valuation of land or other assets made upon a revaluation of the company's fixed property."

■■ As used in the franchise tax law in arriving at a proper meaning of that term, the purposes of the Legislature should be looked to. It is to be borne in mind that a franchise tax is not a tax upon the property of the corporation nor one upon its income, though both are to be regarded in measuring such tax, but a charge made by the state against the corporation for the privilege granted it to do business in the state. State ex rel. Marquette Hotel Inv. Co. v. State Tax Com., 282 Mo. 213, 221 S. W. 721, 726; Southern Realty Co. v. McCallum (C. C. A.) 65 F.(2d) 934. Manifestly, as appears both from article 7084, R. S., as amended, and from amended article 7089, R. S., prescribing the information such corporation is required to furnish the secretary of state, it was the purpose of the Legislature to levy against the corporation a tax commensurate with the value of the privilege granted, as that value is reflected by the information contained in the corporation's franchise tax report. Prior to the 1930 and 1931 amendments (Acts 1930, 5th Called Sess., c. 68, § 3 and Acts 1931, c. 265, §§ 1, 2), the tax was computed on the basis of the capital stock, surplus, and undivided profits. Under that law, however, it seems that a practice had grown up wherein foreign corporations with small capital stock issues were organized, secured a permit to do business in Texas based on that capital, then borrowed large sums of money which they used in conducting large businesses in the state, thus enjoying a valuable privilege in an extensive way for which they paid the state only a nominal sum. The amendment of 1931, therefore, added, as a basis for evaluating that privilege, bonds, notes, and debentures of such corporation not maturing in less than a year. This amendment but evinces a legislative intent to reckon the amount of the tax to be charged in proportion to the value of the privilege granted. As was stated by the Supreme Court of Missouri in State ex rel. Marquette Hotel Inv. Co. v. State Tax Com., supra: "Franchise taxes, to be fair, should be measured by the volume of business. The volume can best be measured by the property used in the business."

■■ Since such tax is payable in advance, the state may, in computing such tax, look to the property owned by the corporation and available to it, for use during the ensuing year in carrying on its business. Such was clearly, we think, the legislative intent.

■■ In the instant case we think that any strict or technical definition of the term "surplus" as used in the statute should not be applied, but one which would effectuate the legislative intent. However carried on its books, the Matagorda county lease, a newly discovered field, was a very valuable asset of the corporation, estimated and represented by appellant itself to have a net value of from $20,000,000 to $42,120,000. Obviously the lease afforded appellant both a potential and actual opportunity of vast and extensive proportions in carrying on its business in this state. The value of its privilege or franchise was increased accordingly. And this value, fixed by appellant, was obviously the basis on which the state's tax was intended to be computed. The fact that this full estimated or appraised value might not eventually be fully realized is not determinative of the amount of the tax. It is clear that appellant anticipated a volume of business resulting from such asset, a potential income, far beyond a normal use of its capital stock, and enjoyed a privilege far more valuable than that measured by its capital stock alone. Regardless of the classification of such item made by it upon its books, under the decisions above cited, and the obvious purposes of the Legislature as expressed in articles 7084 and 7089, R. S., as amended (Vernon's Ann. Civ. St. arts. 7084, 7089), we think the secretary of state properly took the value placed thereon by appellant in its report into consideration in computing the amount of the franchise tax due the state by appellant.

It follows, therefore, that the tax demanded of appellant was not one arbitrarily fixed by the secretary of state, nor contrary to the holding of the court in Southern Realty Corporation v. McCallum, supra. Nor was it undertaken to be assessed by the secretary of state. It was fixed by statute, and the only thing the secretary of state did was to compute the amount of such tax from the information furnished him by appellant itself in its sworn report filed in his office.

■ Appellant also urges that the portion of article 7091, R. S., which gives the secretary of state authority to declare the corporation's permit to do business in Texas forfeited for nonpayment of franchise taxes, without judicial ascertainment of such fact, is unconstitutional and a denial to it of due process of law. This question was decided adversely to appellant's contention by the Supreme Court in Federal Crude Oil Company v. Yount-

Lee Oil Company, 122 Tex. 21, 52 S.W.(2d) 56; and particularly in Shaw v. Lone Star Building & Loan Ass'n (Tex. Com. App.) 71 S.W.(2d) 863, to which cases we refer without further discussion of that issue here.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.