## FORD MOTOR CO. v. CLARK, Secretary of State of State of Texas et al.

### No. 8664.

Circuit Court of Appeals, Fifth Circuit.

Dec. 15, 1938.

Gaius G. Gannon, of Houston, Tex., for appellant.

Wm. McCraw, Earl Street, and Llewellyn B. Duke, all of Austin, Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

·This appeal is from the dismissal on demurrer of an action by Ford Motor Company against officers of the State of Texas to recover certain State franchise taxes for the year 1936 paid under protest. The contention is that in the amount sued for the exaction violated the interstate commerce clause of the federal Constitution, U.S.C.A.Const. art. 1, § 8, cl. 3, in that it burdened the interstate business of the taxpayer, and the due process clause of the Fourteenth Amendment, U.S.C.A.Const. Amend. 14, by taxing property outside the State of Texas.

The franchise tax law, Revised Statutes of 1925, Arts. 7084, 7085, as amended, Vernon's Ann.Civ.St.Tex. art. 7084, lays a tax on domestic and foreign corporations chartered or authorized to do business in Texas, payable each year in advance and graduated according to the amount of capital stock, surplus and undivided profits, plus outstanding notes and bonds running for more than a year; or when business is done also in other States, on that proportion of the capital, etc., which the gross receipts from business done in Texas the previous year bears to the gross receipts from the entire business of the corporation. The calculation is made from a return under oath by the taxpayer. The law was analyzed and its general constitutionality as against the commerce clause and the Fourteenth Amendment declared in Southern Realty Corp. v. McCallum, 5 Cir., 65 F.2d 934, and its application to the circumstances of the eighteen complainants in that case was upheld. Certiorari was refused, Southern Realty Corp. v. Heath, 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596, and our interpretation of the law was indorsed by the State Court of Civil Appeals in United North & South Development Co. v. Heath, 78 S.W.2d 650. We said [page 935]: "The tax is not laid on property or income, though both are regarded in measuring it. It is laid on the privilege granted to the corporation, whether domestic or foreign, to do business for one year in Texas with the capital set-up which it has chosen to use. The tax for this opportunity to do the year's business is directly 'measured by the business capital about to be used rather than by the income which it may afterwards appear was realized. The origin, form, and location of that capital, whether in or out of the state, is unimportant, provided it is to contribute to the corporation's business power within the state. When the corporation is to do business in other states also, avoidance of a trespass on interstate commerce or on that done beyond the territorial jurisdiction of the taxing state is secured by apportioning the business potency of the corporation represented by its business capital according to the business actually done during the preceding calendar year in the taxing state as indicated by gross receipts, compared with all its business everywhere." To this exposition of the law we adhere.

The appellant's real contention is that because it both manufactures and sells automobiles, the principal manufacturing activity and the capital necessary for it being in Michigan, gross income from sales is an arbitrary basis of apportionment in its case; and because the proportion of its capital investments located in Texas is far less than the proportion of its income there received, there is in effect a taxing of in-

vestments outside that State; and since the capital and investments outside the State are used largely in interstate business there is a burden on interstate commerce.

The facts pleaded are, broadly stated, that Ford Motor Company, a Delaware corporation, was engaged in manufacturing automobiles and tractors and the parts thereof principally in Michigan, its business domicile, where its largest investments in plant were and where its owned securities are said to be taxable, altogether about $500,000,000 worth out of a total of about $600,000,000. It sold some of its product in Michigan, and some of it in interstate and foreign commerce, but in large measure the parts for the machines were shipped to assembling plants in other States, and there put together, finished and tested, and sold locally. This was done in Texas. In 1935 the machines there finished and sold produced a gross income of $34,272,887. The receipts of the Company everywhere were $888,344,975. The Texas business was thus 3.858% of the whole. The Company's total capital set-up as defined by the statute was returned as $600,242,151, but the return stated: "Total capital actually located in or used in connection with business done in Texas, $3,079,417." Taxes were tendered calculated on the latter figure. It is readily seen that 3.858% of the total capital is $23,157,705. The additional taxes demanded and paid on the latter basis constitute the matter in dispute. It thus appears that on the taxpayer's own figures, if the statute is applied according to its terms, there is no overpayment. But the protest stated and the petition alleges that the capital was invested and used in various ways. There were lands, buildings and machinery aggregating about $200,000,000. Inventories, cash, and accounts receivable (which may be considered working capital) aggregated some $250,000,000. There were United States and State and municipal securities put at $79,000,000, and other smaller items. The investments returned as in Texas were about $1,168,000 in land and buildings; power plant $46,000; inventory, $1,012,000; accounts receivable $389,603, besides smaller items. Considering all the investments and their actual location it is argued that the formula of the Texas statute leads to absurd results, and that if a similar tax were levied in Michigan where sales are relatively small but where most of the assets are and most of the activity of the Company occurs, the result would be out of all fair proportion.

We do not think this argument controlling. This is not a tax on property. Each State, Michigan included, may tax all property having an actual or business situs therein. In addition each State in which this Company does business may exact an excise tax on that privilege. Texas has done so. The tax is non-discriminatory, applying alike to domestic and foreign corporations. It is not prohibitory, being in this case, without penalty, $7,247 on $34,272,000 of business done, or less than two ten-thousandths of one percent. It is conceded that it might validly have been laid as a direct percentage on the business done. The objection is to the formula by which the tax is estimated. That it is graduated according to the capital strength of the corporation, which is its business potency, we held in the McCallum Case to be not arbitrary. The holding is supported by the recent case of Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193; 112 A.L.R. 293. When business is done also in other states, so that the business potency inherent in the capital is thus divided, it is not arbitrary to apportion the capital which is to measure the tax in proportion to the income realized in the taxing State. Nor do we think the fact that manufacture in another State of the thing sold renders the measure of the tax unreasonable. The object of the whole corporate enterprise is to make money. The corporation has made none by manufacture until it sells the product. If it chooses to sell in Texas, and extract cash from Texas, with the great advantage that manufacturing its own wares gives in competition with those who do not manufacture, it is not unreasonable to regard the potency of the capital used in manufacture as following proportionately the goods offered for sale in Texas. And it must be remembered that in this case part of the manufacture occurs in Texas. The machines are assembled and finished there. If it be practicable to separate the manufacturing from the selling activities, and the manufacturing activities in Texas from those elsewhere, this petition affords no data to do it. The value of the property as located in the several States would not be a reasonable basis of apportionment. Under such a basis this Company could

manufacture wholly in another State, and sell its cars in Texas without any local investment and pay no tax there for the very valuable sales privilege. It is more reasonable to do as the Texas statute has done, to consider that in making sales and realizing income in Texas all the capital the seller has used in preparing the goods for sale has contributed to the result. The argument is made that a subsidiary corporation with but little capital might be used to make the sales and thus limit the tax. In such a case the subsidiary might be held a mere agent to sell. But if that plan could be successful, it is no answer to the taxation of the parent-company so long as it itself continues to sell its machines in Texas.

██ It is further argued that the United States bonds and stocks in foreign corporations owned by the taxpayer cannot reasonably be included in capital contributing to sales in Texas. The presumption is that all the property of a business corporation is useful in its business. It should not have it otherwise. The Ford Motor Company has no business except the making and selling of cars. The securities can readily be used as a means of raising cash for working capital. What the foreign stocks are is not shown. If they have no relation to the business of making and selling cars the petitioner should have made the fact appear.

██ We find no basis for the contention that this tax on the privilege of doing a local business in Texas, measured in the way it is measured, taxes or otherwise burdens interstate commerce. For the more goods the taxpayer sells in interstate commerce, the less taxes it will owe in Texas.

Cases cited on the taxation of income such as Hans Rees' Sons v. North Carolina, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879, are irrelevant. Wallace v. Hines, 253 U.S. 66, 40 S.Ct. 435, 64 L.Ed. 782, would have been in point if the court had held the North Dakota excise tax law invalid in its general application. It held void only an exceptional phase of it which put upon railroads a peculiar method of mileage apportionment of capital between the States in which they did business, which was thought arbitrary. Had the apportionment for railroads been like that for other corporations, on the basis of business done, as here, we apprehend the result would have been otherwise. Compare Bass, Ratcliff & Gretton v. State Tax Commission, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282.

Judgment affirmed.