## FORD MOTOR CO. *v.* BEAUCHAMP, SECRETARY OF STATE OF THE STATE OF TEXAS, ET AL.

No. 17. Argued October 16, 17, 1939.—Decided December 11, 1939.

332

*Mr. Gaius G. Gannon,* with whom *Mr. Palmer Hutcheson* was on the brief, for petitioner.

*Mr. Glenn R. Lewis,* Assistant Attorney General of Texas, with whom *Messrs. Gerald C. Mann,* Attorney General, and *W. F. Moore,* First Assistant Attorney General, were on the brief, for respondents.

MR. JUSTICE REED delivered the opinion of the Court.

The question for determination in this proceeding is the validity, as applied to this petitioner, of a statute of the State of Texas levying an annual franchise tax on all corporations chartered or authorized to do business in Texas, measured by a graduated charge upon such proportion of the outstanding capital stock, surplus and undivided profits of the corporation, plus its long term obligations, as the gross receipts of its Texas business bear to the total gross receipts from its entire business.

The Court of Appeals [1] affirmed the judgment of the District Court, upholding the validity of the tax. On account of an alleged probable conflict with the principles underlying certain decisions of this Court certiorari was granted. [2] The applicable provisions of the statute appear below. [3]

---

[1] *Ford Motor Co.* v. *Clark,* 100 F. 2d 515.

[2] 306 U. S. 628.

[3] "Article 7084. Amount of Tax.—(A) Except as herein provided, every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, shall, . . . each year, pay

By Article 7057b of the Revised Civil Statutes of Texas any corporation which may be required to pay any franchise or other privilege tax may pay it under written protest and bring suit within a limited time thereafter in any court of competent jurisdiction in Travis County, Texas, against the public official charged with the duty of collecting such tax, the State Treasurer and the Attorney General, for its recovery. This suit was instituted in the District Court of the United States, Western District, Austin Division, against the state officials authorized to be made defendants. Defendants joined in a demurrer on the ground that no cause of action was set out in the petition.

Petitioner owns and operates a large manufactory of motor vehicles in Michigan and assembly plants in Texas. No parts for the automobiles produced by petitioner are manufactured at any point within Texas. The manufactured parts are shipped to petitioner's assembly plants in Texas and are there assembled. The assembled vehicles are sold in intrastate commerce to various dealers who in turn sell the vehicles to the public. A relatively small number of completed vehicles are shipped into Texas and later sold in intrastate commerce along with large quantities of motor parts and accessories. Without undertaking to be precise, the gross receipts from business done in Texas for the year in question amounted to approximately $34,000,000. Petitioner's total gross re-

---

. . . a franchise tax . . ., based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, other than those maturing in less than a year from date of issue, as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business, which tax shall be computed at the following rates for each One Thousand Dollars ($1,000.00) or fractional part thereof; One Dollar ($1.00) to One Million Dollars ($1,000,000.00), sixty cents (60¢) . . ."

ceipts were about $888,000,000. The ratio of Texas receipts to total receipts was 3.85+ per cent. Petitioner's total taxable capital was $600,000,000+. The value of all assets located in Texas was somewhat over $3,000,000, while the value of the capital allocated to Texas as a base for taxation by the statutory formula would be in excess of $23,000,000.

For the taxable year beginning May 1, 1936, a franchise tax was tendered Texas in the sum of $1,224, computed on the actual net book value of all of petitioner's assets in Texas. On demand and under protest an additional franchise tax and penalty was paid in the sum of $7,529, based on the allocation to Texas of capital as calculated by the statutory formula. This suit was brought to recover the alleged unlawful exaction.

This exaction, petitioner pleads, is calculated from a formula that results in the levy of a tax on assets used in petitioner's interstate business in violation of Article I, § 8, of the Constitution. It is further alleged that the tax operates to deprive petitioner of its property without due process of law in violation of the Fourteenth Amendment because it must pay a tax on property neither located nor used within the State of Texas and on activities beyond the borders of Texas.

The statute calls the excise a franchise tax. It is obviously payment for the privilege of carrying on business in Texas.[4] There is no question but that the State has the power to make a charge against domestic or foreign corporations for the opportunity to transact this intrastate business.[5] The exploitation by foreign corporations

---

[4] *Investment Securities Co.* v. *Meharg*, 115 Texas 441; 282 S. W. 802; *United North & South Development Co.* v. *Heath*, 78 S. W. 2d 650 (Tex. Civ. App.).

[5] *Ficklen* v. *Shelby County Taxing District*, 145 U. S. 1, 21; *American Mfg. Co.* v. *St. Louis*, 250 U. S. 459; *Matson Nav. Co.* v. *State Board*, 297 U. S. 441; *Western Live Stock* v. *Bureau*, 303 U. S. 250; *Coverdale* v. *Pipe Line Co.*, 303 U. S. 604, 608.

of intrastate opportunities under the protection and encouragement of local government offers a basis for taxation as unrestricted as that for domestic corporations. In laying a local privilege tax, the state sovereignty may place a charge upon that privilege for the protection afforded. When that charge, as here, is based upon the proportion of the capital employed in Texas, calculated by the percentage of sales which are within the state, no provision of the Federal Constitution is violated.

The motor vehicles for the marketing of which the privilege is used are concededly sold in intrastate commerce. The tax here levied is not for the privilege of engaging in any transaction across state lines or activity carried on in another state. It is much like that upheld in *Bass, Ratcliff & Gretton* v. *Tax Commission.*[6] In that case a tax was laid for the privilege of doing business in New York determined, for corporations which did not transact all their business within that state, by a percentage of that part of the net income which is calculated by the proportion which the aggregate of specified classes of property within the state bears to all the property of the corporation.[7]

In *National Leather Co.* v. *Massachusetts*[8] this Court upheld a tax for the privilege of doing business in a state by a corporation of an amount "equal to five dollars per thousand upon the value of the corporate excess employed by it within the commonwealth." This excess was defined as "such proportion of the fair cash value of all the shares constituting the capital stock . . . as the value of the assets, both real and personal, employed in any business within the commonwealth . . . bears to the value of the total assets of the corporation." The National Leather Company, a Maine corporation, owned the stock of two

---

[6] 266 U. S. 271.

[7] Cf. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120.

[8] 277 U. S. 413.

other Maine corporations. Their plants were in Massachusetts. On the assumption that the situs of the stock followed the domicile of the owner, the taxpayer challenged the inclusion of the Maine stock in the basis for the local tax. This Court held that Massachusetts was free to use the stock for the calculation of the local tax. Similar methods of determining privilege taxes were left to the states in *International Shoe Co.* v. *Shartel*[9] and *New York* v. *Latrobe.*[10] The Constitution recognizes the dual interests of the national and state governments and permits taxes for local privileges upon the intrastate activities of the farflung enterprises which gain large benefits from the nationwide market, protected by the commerce clause. We reject petitioner's contention that constitutionality of state taxation turns on so narrow an issue as whether local assets rather than local gross receipts are used in a taxing formula.

In a unitary enterprise, property outside the state, when correlated in use with property within the state, necessarily affects the worth of the privilege within the state. Financial power inherent in the possession of assets may be applied, with flexibility, at whatever point within or without the state the managers of the business may determine. For this reason it is held that an entrance fee may be properly measured by capital wherever located.[11] The weight, in determining the value of the intrastate privilege, given the property beyond the state boundaries is but a recognition of the very real effect its existence has upon the value of the privilege granted within the taxing state. This was recognized by this Court in *Atlantic &*

---

[9] 279 U. S. 429.

[10] 279 U. S. 421.

[11] *Atlantic Refining Co.* v. *Virginia,* 302 U. S. 22, 29; cf. *Kansas City, F. S. & M. Ry. Co.* v. *Botkin,* 240 U. S. 227, 235.

*Pacific Tea Co.* v. *Grosjean* [12] where an occupation or license tax on chain stores was graduated "on the number of stores or mercantile establishments" included under the same management "whether operated in this State or not." We said: "The law rates the privilege enjoyèd in Louisiana according to the nature and extent of that privilege in the light of the advantages, the capacity, and the competitive ability of the chain's stores in Louisiana considered not by themselves, as if they constituted the whole organization, but in their setting as integral parts of a much larger organization." [13] This same rule applies here. *James* v. *Dravo Contracting Co.* [14] contains nothing contrary to this view. The statute under consideration there levied a privilege tax "equal to two per cent. of the gross income of the business." In so far as it was upon receipts in other states for work done in other states, it was conceded to be outside of the taxing power of the statute.

*Affirmed.*

Mr. Justice McReynolds is of opinion that the judgment complained of should be reversed.

Mr. Justice Black and Mr. Justice Douglas concur in the result.

[12] 301 U. S. 412, 424–425.
[13] 301 U. S. 425.
[14] 302 U. S. 134, 139.