**Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, et al., Appellants,**

v.

**GENERAL DYNAMICS CORPORATION, Appellee.**

No. 12350.

Court of Civil Appeals of Texas, Austin.

Jan. 28, 1976.

Rehearing Denied Feb. 18, 1976.

John L. Hill, Atty. Gen., R. L. Lattimore, Asst. Atty. Gen., Austin, for appellants.

Mary Joe Carroll, Michael L. Cook, Clark, Thomas, Winters & Shapiro, Austin, for appellee.

O'QUINN, Justice.

General Dynamics Corporation brought this action in district court of Travis County to recover in excess of $2,000,000 in franchise taxes paid to the State of Texas under protest for the years 1968 through 1971.

General Dynamics is engaged primarily in manufacture and sales of defense equipment and supplies, and during the taxable years its operations were performed in Waco, San Antonio, Houston, and Daingerfield, as well as within a federal enclave in Tarrant County consisting of about 428 acres of land known as Air Force Plant No. 4 site, which is leased to the corporation.

The taxes arose out of operations of General Dynamics in Texas, including for computation purposes the gross receipts from the corporation's operations within the federal enclave in Tarrant County. That portion of the taxes measured by gross receipts attributed to the enclave business constitutes the matter litigated in this cause.

The trial court sitting without a jury held that General Dynamics should recover all such taxes, amounting to $2,008,757.11, computed on the gross receipts from the corporation's operation within the enclave, together with interest on each payment from the date paid.

The State, through proper representatives, has appealed. We will reverse the judgment of the trial court and will render judgment that General Dynamics take nothing by its suit.

The State presents a single point of error:

"The trial court erred in voiding the franchise tax assessed against the percentage of appellee corporation's taxable capital measured by its gross receipts from business done in a federal enclave situated within the State . . . because such allocation is permitted under Article 12.02, Title 122A, Taxation-General, V.T.C.S., and the Buck Act, 4 U.S.C.A., Sections 105–110."

The State contends, and we agree with the contention, that the holding of the Supreme Court in *Humble Oil and Refining Company v. Calvert*, 478 S.W.2d 926 (Tex. Sup.1972), is controlling of decision in this appeal. In that case the oil company sought to recover occupation taxes paid on production from leases on a federal enclave. The Supreme Court held that the company was not exempt from the tax, its imposition by the State being authorized under the Buck Act. Although in that case an *occupation* tax was involved, we conclude that the Supreme Court's analysis of the Buck Act demonstrates that scope of the Act is sufficiently broad to include *franchise* taxes involved in this appeal.

Congress enacted the Buck Act in 1940 to enable states to impose certain taxes, including "income taxes," on business conducted within federal enclaves. The Act defines "income taxes" in broad terms to mean ". . . any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." 4 U.S.C.A. sec. 110(c), as amended 1947.

The Supreme Court, in *Humble Oil and Refining Company v. Calvert, supra*, noted the intent of Congress in this language:

"The Congressional intent is strongly stated in the bill's Senate Report [Report of Senate Finance Committee, cited in footnote 2, 478 S.W.2d 929] where it is stated that '[t]his definition [of income tax] . . . must of necessity cover a broad field because of the great variations to be found between the different State laws. The intent of your committee in laying down such a broad definition was to include therein any State tax

(whether known as a *corporate-franchise tax*, or business-privilege tax, *or any oth-. er name*) *if it is levied on*, with respect to, *or measured by* net income, gross income, or *gross receipts.*'" (Emphasis added by this Court)

General Dynamics argues that the Texas statutes by their terms merely tax stated capital and therefore the franchise tax is not one measured by income so as to come within the definition contained in the Buck Act. We find that analysis of the statutes fails to sustain this contention.

Article 12.01 states: "(1) . . . every domestic and foreign corporation . . . chartered or authorized to do business in Texas or doing business in Texas, shall . . . pay to the Comptroller a franchise tax . . . which shall be based on . . . (a)(i) Two Dollars and Seventy-five Cents ($2.75) per One Thousand Dollars ($1,000) . . . applied to that portion of the sum of the *stated capital, surplus* and *undivided profits*, the sum of which for the purposes of this Chapter is hereafter referred to as '*taxable capital*' . . ." (Emphasis added)

This statute clearly demonstrates that the tax is based upon the three elements of stated capital, surplus, and undivided profits, with the result that the franchise tax will vary in direct proportion to changes in gross income or gross receipts as set out in the Buck Act.

Article 12.02 states: "(1)(a) Each corporation . . . . shall determine the portion of its entire *taxable capital* taxable by the State of Texas by multiplying same by an allocation percentage which shall be the percentage relationship which the *gross receipts* from its business done in Texas bear to the *total gross receipts* of the corporation from its entire business." (Emphasis added)

By this article the Legislature merely allocated the taxable capital based upon the intrastate transactions, and the amount of income within Texas will determine what percentage of taxable capital is subject to the franchise tax.

General Dynamics relies upon the holding of the Supreme Court of the United States in *Ford Motor Company v. Beauchamp*, 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304 (1940), affirming *Ford Motor Company v. Clark*, 100 F.2d 515 (5th Cir.), in contending that the Texas franchise tax is a tax on capital as distinguished from income. This case was decided in 1939, rehearing denied in January, 1940, and of course does not purport to construe the measures provided in the Buck Act.

But in *Clark* the court observed that "The tax is not laid on property or income, though both are regarded in *measuring it.*" (100 F.2d 516) (Emphasis added) The Buck Act, as already noted, defines "income tax" in terms of a tax "measured by" either "net income, gross income, or gross receipts." In *Beauchamp* the Supreme Court stated: "The statute calls the excise a franchise tax. It is obviously payment for the *privilege of carrying on business* in Texas." (308 U.S. 334, 60 S.Ct. 275) (Emphasis added) The legislative intent of the Buck Act, under its "broad definition was to include . . . any State tax (whether known as a corporate-franchise tax, or *business-privilege tax,* or any other name) . . ." (478 S.W.2d 929) (Emphasis added)

We conclude that the principles of law applied by the Supreme Court of Texas to the oil and gas production tax are applicable with equal force to the franchise tax, for the reason that the definition of "income tax" contained in the Buck Act encompasses business-privilege taxes in both instances because each tax relates to and is measured by income or receipts. The trial court erred in its conclusion that "the assessment and collection of taxes was unlawful, unconstitutional, wrongful and void."

The judgment of the trial court is in all things reversed. Judgment is here rendered that appellee, General Dynamics Cor-

poration, take nothing by its suit, and that all costs be assessed against the appellee.

Reversed and rendered.