**GENERAL DYNAMICS CORPORATION,**
Petitioner,

v.

**Bob BULLOCK, Comptroller et al., Respondents.**

No. B–5887.

Supreme Court of Texas.

Dec. 31, 1976.

Rehearing Denied Feb. 23, 1977.

Clark, Thomas, Winters & Shapiro, Mary Joe Carroll and Michael L. Cook, Austin, for petitioner.

John L. Hill, Atty. Gen., Steve Bickerstaff, Asst. Atty. Gen., Austin, for respondents.

SAM D. JOHNSON, Justice.

General Dynamics Corporation brought this action to recover in excess of $2 million in franchise taxes paid pursuant to Article 12.01, *et seq.,* Texas Taxation-General Annotated, to the State of Texas under protest for the years 1968 through 1971. General Dynamics maintained that this tax was not included within the Buck Act, United States Code Annotated, Title 4, Sections 105–110, and therefore could not be collected with respect to activities occurring within a federal enclave. The trial court, sitting without a jury, held that General Dynamics was entitled to recover these taxes. The

court of civil appeals reversed and rendered. 533 S.W.2d 118. We affirm.

General Dynamics is a private corporation primarily engaged in the manufacture and sale of defense equipment and supplies. The Corporation conducts business at several locations in Texas, though the majority of its operations occurred on a federal enclave in Tarrant County which consists of about 428 acres of land known as Air Force Plant No. 4 Site. The land was leased to the Corporation by the federal government.

The dispute arose over the classification by the State of the gross receipts from General Dynamics' operations within the federal enclave in Tarrant County as gross receipts arising in Texas. The Buck Act[1] permits a state to collect an "income tax"[2] on business activities, such as those of General Dynamics, within a federal enclave. The State contended that the Texas franchise tax[3] is an "income tax" within the

1. Section 106(a) of the Buck Act specifies: "No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

2. Section 110(c) of the Buck Act defines the term "income tax" as follows: "The term 'income tax' means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts."

3. Article 12.01, Texas Taxation-General Annotated, reads as follows: "(1) Except as herein provided, every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas or doing business in Texas, shall file such reports as are required by Articles 12.08 and 12.19 and pay to the Comptroller a franchise tax for the period from May 1 of each year to and including April 30 of the following year which shall be based on whichever of the following Subsections (a), (b), or (c) shall yield the greatest tax: "(a) Basic Tax "(i) Two Dollars and Seventy-five Cents ($2.75) per One Thousand Dollars ($1,000) or fractional part thereof applied to that *portion of the*

*sum of the stated capital, surplus and undivided profits,* the sum of which for the purposes of this Chapter is hereafter referred to as 'taxable capital,' *allocable to Texas* in accordance with Article 12.02 of this Chapter. "As used in this Chapter, the phrase 'stated capital' shall have the same meaning as defined in Article 1.02 of the Texas Business Corporation Act." [Emphasis added.]

Article 12.02, Texas Taxation-General Annotated, reads in pertinent part as follows: "(1)(a) Each corporation liable for payment of a franchise tax shall determine the portion of its entire taxable capital taxable by the State of Texas by multiplying same by an allocation percentage which shall be the percentage relationship which the gross receipts from its business done in Texas bear to the total gross receipts of the corporation from its entire business."

Article 1.02, Texas Business Corporation Act Annotated, defines "stated capital" as follows: "(11) 'Stated capital' means, at any particular time, the sum of: "(a) the par value of all shares of the corporation having a par value that have been issued, "(b) the consideration fixed by the corporation in the manner provided by law for all shares of the corporation without par value that have been issued, except such part of the consideration actually received therefor as may have been allocated to capital surplus in a manner permitted by law, and "(c) such amounts not included in paragraphs (a) and (b) of this subsection as have been

meaning of the Buck Act and, therefore, the taxes were due.

The single question to be resolved is whether the Texas franchise tax paid by General Dynamics is an "income tax" under the Buck Act and may be levied for business conducted on a federal enclave.

The court of civil appeals held that this court's decision in *Humble Oil & Refining Company v. Calvert,* 478 S.W.2d 926, *cert. denied,* 409 U.S. 967, 93 S.Ct. 293, 34 L.Ed.2d 234 (1972), controlled the decision, that the tax levied in the instant case was an "income tax" as that term is used in the Buck Act, and that the State could therefore classify the gross receipts derived from the federal enclave as part of the gross receipts resulting from business activities in Texas.

■■■ Federal law governs the question of whether a tax is an "income tax" within the meaning of the Buck Act. *Howard v. Commissioners of Louisville,* 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953). When previously interpreting the Buck Act, this court has noted:

> "The Congressional intent is strongly stated in the bill's Senate Report where it is stated that '[t]his definition [of income tax] . . . must of necessity cover a broad field because of the great variations to be found between the different State laws. The intent of your committee in laying down such a broad definition was to include therein *any State tax* (whether known as a corporate-franchise tax, or business-privilege tax, or any other name) *if it is levied on, with respect to, or measured by net income, gross income, or gross receipts.'*" *Humble Oil & Refining Company v. Calvert, supra,* at 929. [Emphasis added.]

Thus, this court must not only apply federal law but also interpret the Buck Act in light of the recognized congressional intent.

transferred to stated capital of the corporation, whether upon the issue of shares as a share dividend or otherwise, minus all reductions from such sum as have been effected in a manner permitted by law."

With respect to the Texas franchise tax, the courts of this state have held that it "is not a tax upon the property of the corporation nor one upon its income, though both are to be regarded in measuring such tax, but a charge made by the state against the corporation for the privilege granted it to do business in the state. . . . [I]t was the purpose of the Legislature to levy against the corporation a tax commensurate with the value of the privilege granted . . . .." *United North & South Development Co. v. Heath,* 78 S.W.2d 650, 652 (Tex. Civ.App.—Austin 1934, writ ref'd). *Accord, Riveroaks Development Corp. v. Shepperd,* 246 S.W.2d 236, 240 (Tex.Civ.App.—Austin 1952, writ ref'd); *Sterling Oil & Refining Corporation v. Isbell,* 202 S.W.2d 300, 302 (Tex.Civ.App.—Austin 1947, no writ); *Houston Oil Co. of Texas v. Lawson,* 175 S.W.2d 716, 723 (Tex.Civ.App.—Galveston 1943, writ ref'd).

The United States Supreme Court, citing the Texas decision in *United North & South Development Co. v. Heath, supra,* has held that the Texas franchise tax "is obviously payment for the privilege of carrying on business in Texas." *Ford Motor Co. v. Beauchamp,* 308 U.S. 331, 334, 60 S.Ct. 273, 274, 84 L.Ed. 304 (1939).

■■ The United States Supreme Court cases, *Commissioner of Internal Revenue v. Glenshaw Glass Co.,* 348 U.S. 426, 431, 75 S.Ct. 473, 99 L.Ed. 483 (1955), and *Old Colony Trust Co. v. Commissioner of Int. Rev.,* 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929), cited in the case of *Humble Oil & Refining Company v. Calvert, supra,* indicates that the federal courts would agree with the analysis of this court in that case as to what "income tax" means under the Buck Act. This court wrote:

> "If the tax in question is based upon income and is measured by that income in money or money's worth, as a net income tax, gross income tax, or gross receipts

Article 1.02 of the Texas Business Corporation Act Annotated defines "surplus" as follows: ". . . the excess of the net assets of a corporation over its stated capital."

tax, it is an 'income tax.'" 478 S.W.2d 926 at 930.

This court further described "income" as "an accession to wealth in the form of economic benefit, value in money or money's worth." 478 S.W.2d 926 at 930. Under the analysis in *Humble Oil & Refining Company v. Calvert, supra,* the granting of the privilege to transact business in the State of Texas represents the realization of gross income to the General Dynamics Corporation because an economic benefit flows to the Corporation.

These economic benefits which flow from the granting of the privilege include the opportunity to transact intrastate business and the right to invoke the protection of the local government. *Ford Motor Co. v. Beauchamp, supra,* 308 U.S. at 334–35, 60 S.Ct. 273. The formula used in the franchise tax is the valuation of the privilege granted by the Legislature. *United North & South Development Co. v. Heath, supra; Riveroaks Development Corp. v. Shepperd, supra.* Accordingly, the franchise tax can be viewed as a tax levied on the economic benefit which flows to General Dynamics Corporation as a result of the granting of the privilege to transact business in Texas.

The proposition that an economic benefit is received and that income is realized by the granting of a franchise is not a unique one. The federal courts have held that extension of a street railway franchise by a city in exchange for a bridge may result in the realization of a capital gain or loss, *Philadelphia Park Amusement Co. v. United States,* 126 F.Supp. 184, 130 Ct.Cl. 166 (1954), and that the sale of a franchise can generate capital gains, *Baxter v. C.I.R.,* 433 F.2d 757 (9th Cir. 1970); *Coca-Cola Bottling Co.,* 22 B.T.A. 686 (1931). Similarly, the federal courts have held that a loss may be realized when a franchise is terminated. The loss of an exclusive sales franchise, *United States v. Hardy,* 74 F.2d 841 (4th Cir. 1935), and the loss of the right to renew a liquor license due to Prohibition, *Elston Co. v. United States,* 21 F.Supp. 267, 86 Ct.Cl. 136 (1937), *Best Brewery Co.,* 16 B.T.A. 1354 (1929), *McAvoy Company,* 10 B.T.A. 1017 (1928), *William Zakon,* 7 B.T.A. 687 (1927), have been allowed as deductions from gross income.

Furthermore, an analysis in terms of the formula employed by the State of Texas also leads to the conclusion that the franchise tax is an "income tax" within the meaning of the Buck Act.

The term "income tax" "means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." Section 110 of the Buck Act. [Emphasis added.]

Federal courts have described the Texas franchise tax in various terms. In *Southern Realty Corporation v. McCallum,* 5 Cir., 65 F.2d 934, 935–36, *cert. denied,* 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596 (1933), the court wrote:

"*The* [corporate franchise] *tax is not laid on property or on income, though both are regarded in measuring it.*"[4] [Emphasis added.]

The fifth circuit has also written that the Texas franchise tax is "*graduated according to capital strength of the corporation,* which

---

4. The full description of the Texas franchise tax made in *Southern Realty Corporation v. McCallum, supra,* at 935–36, is as follows:

"*The* [corporate franchise] *tax is not laid on property or on income, though both are regarded in measuring it.* It is laid on the privilege granted to the corporation, whether domestic or foreign, to do business for one year in Texas with the capital set-up which it has chosen to use. *The tax for this opportunity to do the year's business is directly measured by the business capital about to be used rather than by the income which it may afterwards appear was realized.* The origin, form, and location of

that capital, whether in or out of the state, is unimportant, provided it is to contribute to the corporation's business power within the state. When the corporation is to do business in other states also, avoidance of a trespass on interstate commerce or on that done beyond the territorial jurisdiction of the taxing state is secured by apportioning the business potency of the corporation represented by its business capital according to the business actually done during the preceding calendar year in the taxing state as indicated by gross receipts, compared with all its business everywhere." [Emphasis added.]

is its business potency." *Ford Motor Co. v. Clark,* 100 F.2d 515, 517 (5 Cir. 1938), aff'd.; 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304 (1939). [Emphasis added.] Finally, in *Ford Motor Co. v. Beauchamp, supra,* 308 U.S. at 335, 60 S.Ct. at 275, the United States Supreme Court wrote that the franchise tax was "*based upon the proportion of the capital employed in Texas, calculated by the percentage of sales which are within the state.*" [Emphasis added.] On the basis of the language employed by the federal courts, it can be reasonably concluded that the Texas franchise tax is one "levied on" capital but "measured by . . . gross receipts." Given the specific wording of the Buck Act, Section 110(c), and the congressional intent that the term "income tax" should include "any State tax . . *measured by . . . gross receipts,*" it is reasonable to view the Texas franchise tax as an "income tax" within the meaning of the Buck Act. [Emphasis added.]

We hold that the Texas franchise tax is an "income tax" within the meaning of the Buck Act either because the privilege to transact business in Texas represents income or because the tax is "measured by gross receipts."

The judgment of the court of civil appeals is affirmed.

REAVLEY, Justice, concurring.

I do not regard the Texas franchise tax as an income tax within the meaning of the Buck Act. The sales within the federal enclave are taken into account only to apportion the corporation's capital as between Texas and other jurisdictions. In that respect I agree with the dissent. For a similar reason I do not regard the franchise tax, or any part of it, as violative of Art. I § 8 of the United States Constitution. While Texas could not tax General Dynamics for the privilege of doing business within the enclave, Texas does and may properly tax General Dynamics for the privilege of doing business throughout the State. For that purpose the apportionment of the corporate capital may be made according to total statewide sales—including sales within the enclave. *Werner Machine Co., Inc. v. Director of Taxation of New Jersey,* 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956); *Educational Films Corp. v. Ward,* 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400 (1930).

GREENHILL, Chief Justice, dissenting.

Under Article I, Section 8 of the U.S. Constitution, the Congress has the exclusive right to legislate over federal enclaves, such as the one in question. Taxation is accomplished by legislation; and, as I understand the Constitution, only the Congress can enact, or authorize, taxing legislation applicable to such enclaves.

The Congress has, in the Buck Act, authorized the collection by the states *only* of *income taxes* on revenues derived from the federal enclaves. The definition of "income tax" is broad; but it does not include a tax on capital. This Court made that distinction in *Humble Oil & Refining Co. v. Calvert,* 478 S.W.2d 926 (1972).

While in *Humble* the tax was called an "occupation tax," the tax was based upon the market value of oil and gas as produced. When oil and gas are produced and have a value (as they do), there is an inflow of wealth, an accretion to wealth, and an economic gain. This, we said, "is the essence of an income tax." 478 S.W.2d at 931. We therefore concluded in *Humble* that the tax on this economic gain or inflow of wealth, by whatever name, was an "income tax" within the meaning of the Buck Act. We held that the oil and gas when produced, and upon which the tax was levied, "could be considered as the money, or money's worth, which comes during a definite period. *It is to be distinguished from capital,* which is a fund of wealth at a particular time."

The *substance* of the tax sought to be collected in *this* case is upon the stated *capital, surplus, and undivided profits* of the corporation. By no stretch of the imagination could it be said to be a tax on any inflow of wealth or upon economic gain.

The fact that the formula for the amount of the tax which is to be paid has in it the factor of the amount of gross receipts does

not, in my opinion, change it from a tax on capital into an income tax.